UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
                                    )
LAURENCE M. ADAMS,                  )
                                    )
                    Plaintiff,      )
        V.                          )  NO: 07-CA-10698 RGS
                                    )
CITY OF BOSTON, et. al.             )
                                    )
                    Defendants.     )
                                    )
```

MEMORANDUM OF PLAINTIFF, LAURENCE M. ADAMS, IN OPPOSITION TO
MOTION TO DISMISS OF DEFENDANTS
ESTATE OF FRANCIS WHALEN AND CITY OF BOSTON (DOCUMENT NO. 13)

I.   Introduction

The plaintiff, Laurence M. Adams, states his opposition to Motion to Dismiss of Defendants Estate of Francis Whalen and City of Boston.  The Amended Complaint does state claims upon which relief may be granted, so pursuant to Rule 12(b)(6) F.R. Civ. P., the Motion to Dismiss should be denied.

II.  Applicable Legal Standards

In ruling on motion to dismiss for failure to state a claim upon which relief can be granted under F.R.Civ.P. 12(b)(6), courts accept the allegations of the complaint as true and view the facts as alleged in a light most favorable to the plaintiff. *Hughes v. Rowe*, 449 U.S. 5, 10 (1980); *Rumford Pharmacy, Inc. v. East Providence*, 970 F.2d 996, 997 (1st Cir. 1992); *Brown v. United States*, 410 F.Supp. 2d 3, 5 (D.Mass. 2006).  Dismissal is only appropriate where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle

him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).
"Even in a civil rights case, a complaint need only include 'a
short and plain statement of the claim showing that the pleader is
entitled to relief.'" *Charles v. City of Boston*, 365 F.Supp. 2d 82,
87 (D. Mass. 2005) *citing Educadores Puertorriquenos En Accion v.
Hernandez*, 367 F.3d 61, 66 (1st Cir. 2004).

III. Factual Allegations[1]

The complaint alleges that the civil rights of Laurence M.
Adams, including the rights to a fair trial, and to due process of
law, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments
were denied. *See* ¶ 40, 70 & 80.  The claims as alleged arise under
42 U.S.C. § 1983. *See* ¶ 1, 65-70, 74-80.

On November 27, 1972, an MBTA employee named James C. Corry
suffered serious injuries as a result of blunt force trauma and he
thereafter died from those injuries.  The Boston Police
investigated the homicide. ¶ 11.  Mr. Adams was subsequently
charged with the murder and armed robbery of Mr. Corry based
largely upon the alleged statements and testimony of a Commonwealth
witness named Wyatt Moore and corroborating testimony from Mr.
Moore's sister, Lynne "Suzie" Moore. Mr. Adams denied involvement
in the death or robbery of Mr. Corry. ¶ 12.  On March 13, 1974, Mr.

---

[1] The plaintiff relies upon the allegations of the Amended Complaint,
which are more detailed than this summary.  To the extent that the defendants
rely upon factual allegations apart from the allegations of the complaint the
plaintiff objects.  The allegations of the complaint that should govern the
analysis on a motion to dismiss.  The plaintiff objects to having the motion
to dismiss converted into a motion for summary judgment where there has been
no opportunity for discovery.

Adams, was convicted of the offenses of murder in the first degree and armed robbery, and he was sentence to death by electrocution. ¶ 13-15.  That sentence was modified to life without parole. ¶ 17. The conviction was affirmed following a first motion for new trial and a direct appeal, by the Supreme Judicial Court on March 31, 1978.  *Commonwealth v. Adams*, 374 Mass. 722 (1978). ¶ 16.

Evidence that was first discovered decades after trial established that the Boston Police Department had exculpatory evidence in its possession at the time of trial which undermined the testimony of Commonwealth witnesses, Wyatt Moore, Suzie Moore, and Police Detective Francis Whalen.  ¶ 19.  Suzie Moore recanted her trial testimony. ¶ 20.  Subsequent to trial it was discovered that the Boston Police Department had a sworn transcribed statement in its possession, whereby a witness advised Boston Police Officers including Detective Whalen, that an individual named Harry Ambers had confessed that he and his brother Warren Ambers had murdered James Corry.  This sworn statement was not provided to the defense prior to trial.  ¶ 22.  Subsequent to trial it was discovered that the Boston Police Department and Detective Whalen, had copies of a report in their possession showing that Wyatt Moore learned information about the death of Mr. Corry from Warren Ambers while Moore and Ambers were incarcerated together. ¶ 23.  At trial Mr. Moore attributed this information to Mr. Adams and did not acknowledge that he learned it from Mr. Ambers.  Subsequent to

trial it was also discovered that hand written notes of Detective Whalen showed that Wyatt Moore had made statements to Detective Whalen which were inconsistent with his trial testimony and which undermined the credibility of Wyatt Moore. ¶ 24.

On April 15, 2004, the Superior Court, Mulligan, J., allowed a Motion For Post Conviction Relief, vacating the convictions for murder and armed robbery.  Judge Mulligan concluded that the newly discovered evidence "casts real doubt on the justice of the conviction" and that there was a "substantial risk that the jury would have reached a different conclusion had the evidence been admitted at trial."  The Court found "'upon sober reflection,' that this is an 'extraordinary case' where in the absence of post conviction relief, a 'miscarriage of justice' will result." ¶ 25. *See* Exhibit B hereto.

Mr. Adams was not retried, and a *nolle prosequi* was entered on June 7, 2004. ¶ 27.  Mr. Adams was incarcerated from prior to the May 15, 1973, probable cause hearing until May 20, 2004, when he was released on recognizance following the allowance of his Motion for Post Conviction Relief.  Mr. Adams was incarcerated for over thirty one years. ¶ 31.  The exculpatory evidence should have been disclosed to Mr. Adams prior to his trial in the criminal case, and as a direct and proximate result of the actions and omissions of the defendants the exculpatory evidence was not disclosed and this caused harm to Mr. Adams.¶ 66-70;75-80.

Francis Whalen, a Detective Sergeant with the Boston Police Department served as the primary investigator in the homicide investigation.  Mr. Whalen investigated the case from its early stages gathering of evidence, the taking statements, providing evidence to the office of the District Attorney, and attending the trial proceedings. ¶ 34.  The Boston Police Department created and maintained records that were held separate and apart from records that were disclosed to the District Attorney, knowing that the District Attorney would have an obligation to disclose such evidence to the defense. ¶ 56, 43.  The Boston Police Department knew of the obligation to disclose *Brady* material and exculpatory evidence, but failed to implement policies and procedures to provide for such disclosures. ¶ 44.  Failing to disclose exculpatory evidence was a *de facto* policy, pattern and practice that was authorized and permitted by the City of Boston Police Department. ¶ 57. As a result of the unconstitutional actions of the defendants Mr. Adams suffered harm, including wrongful conviction, deprivation of due process of law, and deprivation of a fair trial. ¶ 64, 69, 70, 78-80.

Detective Whalen is now deceased. *See* Exhibit A to Defendants' Memorandum ("D.Mem.").  The Amended Complaint alleges that in the event that Mr. Whalen is deceased, the civil action is against his estate. ¶ 7.  Grace Baker, of Bridgewater, Massachusetts, the Executrix of the Estate of Francis Whalen (Norfolk Probate Court

No: 93P-2394E1), was served with a summons and complaint and a return of service was timely filed with this Court. A notice regarding the pendency of this case has been filed with the Norfolk County Probate Court. *See* Exhibit A hereto.

IV.   BASED UPON THE GOVERNING LAW AND THE ALLEGATIONS OF THE AMENDED COMPLAINT, THE MOTION TO DISMISS MUST BE DENIED

A.   Count I is not time barred.

The Estate of Francis Whalen argues that the claims against it are time barred. D.Mem. at 6-7. While this case arises from events transpiring over thirty years ago the cause of action based upon the wrongful conviction did not accrue until the conviction was vacated and until a ruling entered terminating the prosecution.

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus. ...

*Heck v. Humphrey*, 512 U.S. 477, 486-487 (1994), *Johnson v. Evans*, 223 F.Supp. 2d 357, 360-361 (D. Mass. 2002)(denying motion to dismiss arising from claims that Boston police officers withheld exculpatory evidence). This action was filed on April 11, 2007, within three years of the date of the decision of the Superior Court allowing the motion for new trial, and within three years of the date of the entry of the *nolle prosequi*. ¶ 28.

The Estate of Whalen argues that since Mr. Whalen died on September 19, 1993, before the cause of action even accrued, the

plaintiff should be barred from pursuing any claim for damages against the estate because claims against estates are generally brought within one year of the date of death. M.G.L. Ch. 197 § 9. The exceptions to this rule are applicable here. First, pursuant to M.G.L. Ch. 197 § 13, a creditor[2] of a deceased whose right of action "shall not accrue within one year after the date of death, may present his claim to the probate court at any time before the estate is *fully* administered. . ."(emphasis added). While the defendants assert that "Whalen's estate has been administered", D.Mem. at 7, *citing* Exhibit G, the document to which the defendants refer only shows that a petition to probate the will was allowed and that an executrix was appointed to probate the estate, not that the estate is "*fully* administered." A probate court case is "fully administered" when a final account has been filed and approved by the Probate Court. *Union Market Nat. Bank of Watertown v. Gardiner*, 276 Mass. 490 (1931). *See* M.G.L. Ch. 206 § 18, 22, 24; Probate Court Rule 29A; Probate Court Form CJ-P 38 (Form of Judgment). No inventory, no account, no final account, and no final judgment has been entered in the Probate Court. A notice regarding the claim pending in this Court was duly filed in the Probate Court. *See* Exhibit A hereto. Under Ch. 197 § 13 this case is timely filed.

---

[2] The claim of Mr. Adams, which is analogous to a tort claim, qualifies him as a "creditor of the estate" as that term is used in Ch. 197 § 13. *See In the Matter of Grabowski*, 444 Mass. 715, 718 (2005)(claim by a minor for lead poisoning); *Peletier v. Chouinard*, 27 Mass. App. Ct. 92, 93 n. 1 (1989); *New England Trust Co. v. Spaulding*, 310 Mass. 424, 429-430 (1941).

Second, pursuant to M.G.L. Ch. 197 § 10, a claim may be brought against an estate more than a year after the death "where required by justice and equity" provided that the creditor is not "chargeable with culpable neglect". *See Mullins v. Garthwait*, 875 F.Supp. 14 (D. Mass. 1994); *In the Matter of Grabowski*, 444 Mass. 715, 718-722 (2005). Where the cause of action did not even accrue until after the one year period had elapsed, there was certainly no "culpable neglect" on the part of the plaintiff. In this case "justice and equity" would be served by entry of an order deeming the claim timely. It would undermine the purposes of 42 U.S.C. § 1983, if the remedies provided therein by federal law were unavailable due to state law which would in effect preclude any cause of action in circumstances such as these. While M.G.L. Ch. 197 § 10, describes a procedure whereby a "bill in equity" may be filed in the Supreme Judicial Court when a party seeks relief after the one year period has elapsed, in a case pending in the United States District Court, there should be no need to file a separate "bill in equity" in the Supreme Judicial Court. This Court may grant equitable relief in the form of an order finding that there was no culpable neglect on the part of the plaintiff and that justice and equity are served by allowing this case to proceed pursuant to M.G.L. Ch. 197 § 10. *See Mullins v. Garthwait*, 875 F.Supp. 14 (D. Mass. 1994). A motion for entry of such an order shall be submitted for this Court's consideration.

Third, pursuant to M.G.L. Ch. 197 § 9A, a claim may be brought

against an estate "within three years next after the cause of action accrues . . . provided . . . that any judgment recovered in any action so brought may be satisfied only from the proceeds of a policy of insurance or bond, if any, and not from the general assets of the estate."  The defendants assert that "there is no insurance or bond from which any judgment may be recovered". D. Mem. at 7.  However, there has been no discovery with regard to what insurance, bond, or indemnification agreements may exist in this matter.  State police officers are indemnified for civil rights actions up to one million dollars. M.G.L. Ch. 258 § 9A. Municipalities may similarly indemnify police officers. See M.G.L. Ch. 258 § 13.  In this case the City of Boston has retained counsel to represent itself, and the same counsel is representing the Estate of Francis Whalen.  Discovery should be permitted to determine whether there is any insurance policy or bond or indemnification agreement, or other policy or practice on the part of the City of Boston to defend and indemnify police officers generally, and Officer Whalen in particular.

B.    Counts I and III do allege causes of action under 42 U.S.C. § 1983 and should not be dismissed.

The defendants argue that the plaintiff has not "identified a deprivation of a federal constitutional right which was established at the time of the underlying criminal proceedings" and that the plaintiff has failed to alleged that the "conduct complained of was the cause of the alleged deprivation". D.Mem. at 8-12.  The plaintiff alleges in Count I of the complaint that his civil

rights, including his right to a fair trial and to due process of law, as guaranteed by the Fifth, Sixth and Fourteenth Amendments were violated by the actions and omissions of Francis Whalen, and as a proximate result of those violations he sustained damage which are compensable pursuant to the provisions of 42 U.S.C. § 1983. *See* ¶ 66-70.    Similarly, Count III alleges that the constitutional rights of Mr. Adams were violated through the actions, policies, practices, and customs of the City of Boston. *See* ¶ 75-80.    The plaintiff alleges claims arising under 42 U.S.C. § 1983, in each of these counts of the complaint, and he has identified the federal constitutional rights that were violated.    The actions and omissions of the defendants, and the resulting violations of his constitutional rights, caused him harm. *See* ¶ 39-40, 54-57, 64, 70, 78-80.

1.   Mr. Adams had Constitutional rights under the Fifth, Sixth and Fourteenth Amendments to have the exculpatory the evidence in the possession of the police so he would not be deprived of due process of law and a fair trial through the introduction of incomplete, misleading, and false evidence.

The defendants assert that at the time of his trial Mr. Adams did not have a right to receive exculpatory evidence and that as a result neither the City of Boston nor the members of the police department did anything wrong in failing to disclose such evidence. D.Mem. at 8-13.  Since the City of Boston is now arguing that there was no constitutional duty or obligation to disclose exculpatory evidence, it may be inferred that this is a reflection of the policy and practices in effect leading up to the trial of Mr.

Adams, whereby exculpatory evidence would not be, and was not, disclosed.  The complaint alleges that the City of Boston police department failed to disclose certain exculpatory evidence to either the office of the district attorney or to the defendant. ¶ 21-24, 34, 43, 56, 57.  The defendants engaged in suppression of exculpatory evidence which resulted in the introduction of incomplete, misleading, and false evidence. ¶ 66-69, 75-80.

The policy, custom, and practice of failing to disclose exculpatory evidence, and allowing trials to proceed based upon incomplete misleading and false evidence is wrong and unconstitutional now and it was wrong and unconstitutional at the time that such evidence was withheld from Mr. Adams leading up to the time of his trial. *See Brady v. Maryland*, 383 U.S. 83, 87 (1963)(due process prohibits suppression of material evidence "irrespective of the good faith or bad faith of the prosecution"); *Giglio v. United States,* 405 U.S. 150, 153-155 (1972)(evidence that may be used to impeach an important witness must be disclosed); *Kyles v. Whitley*, 514 U.S. 419 (1995); *Brady v. Dill,* 187 F.3d 104, 114 (1st Cir. 1999)("Constitutional wrong results from the officer's failure to deliver material information to competent authorities."); *Maher v. Town of Ayer*, 463 F.Supp. 2d 117, 122 (D.Mass. 2006)(claim under § 1983 premised in part upon police officer's failure to disclose evidence "that could have been put to exculpatory use at trial"); *Commonwealth v. Beneficial Finance Co.,* 360 Mass. 18, 317 (1971); *Commonwealth v. Ellison*, 376 Mass. 1

(1978).  By the time of the criminal trial the requirement that exculpatory evidence be disclosed was well established, and such a requirement would be meaningless if the police were free to withhold such evidence from the prosecutor in order to improve the chances of obtaining a conviction. *See Barbee v. Warden*, 331 F.2d 842, 846 (4th Cir. 1964)("If the police allow the State's Attorney to produce evidence pointing to guilt without informing him of other evidence in their possession which contradicts this inference, [police] officers are practicing deception not only on the State's Attorney but on the court and the defendant."); *Jones v. Chicago*, 856 F.2d 985, 995 (7th Cir. 1988)(Judgment under § 1983 affirmed based upon failure of police, and city, to disclose exculpatory evidence as required by *Brady*.).  The trial court relied upon this failure to disclose exculpatory evidence in allowing the motion for new trial finding that such evidence "casts real doubt on the justice of the conviction" and that there was a "substantial risk that the jury would have reached a different conclusion had the evidence been admitted at trial." ¶ 25. *See* Exhibit B at p. 5.  The trial court expressly found that Mr. Adams did have a constitutional right to such evidence.[3]

Other cases upon which the defendants rely to support their

---

[3] "Newly discovered evidence in this case constitutes material exculpatory evidence that should have been disclosed by the Commonwealth to the defense pursuant to the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article 12 of the Massachusetts Declaration of Rights." *See Commonwealth v. Adams*, 2004 Mass. Super. LEXIS 225, at *18-*19. (Suffolk Superior Court April 15, 2004, Mulligan, J.) Exhibit B at 5.

argument that there was no constitutional right to receive exculpatory evidence are inapplicable. D.Mem. at 10. *See Commonwealth v. Sheeran*, 370 Mass. 82, 86 (1976)(Case does not address whether a defendant is entitled on constitutional grounds, to exculpatory evidence but only whether police reports were required to be disclosed because they may have been "public records"); *Bougas v. Chief of Police of Lexington*, 371 Mass. 59, 64 (1976) (discussion of the statutory requirements to disclose public records, with no discussion of constitutional requirements); *Commonwealth v. French*, 357 Mass. 356, 399 (1970)(In a summary of assigned errors the court noted that a trial court is not always required to provide access to police reports and that if such reports were "public records" there may be a statutory procedure to gain access. No discussion of constitutional rights arising under *Brady*.)[4]

The defendants argue that there was no obligation to disclose the exculpatory evidence because the trial court, prior to trial, denied certain discovery motions. D.Mem. at 10. However, under *Brady* principles there is an obligation to disclose exculpatory evidence even if a trial court denies discovery motions. *See*

---

[4]    *Commonwealth v. French*, 357 Mass. 356 (1970) involved the convictions six defendants in connection with the murder of Edward Deegan in 1965. The suppression of exculpatory evidence and reliance upon false evidence in connection with that case has been the subject of litigation in the federal courts. *See Limone v. Condon*, 372 F.3d 39 (1st Cir. 2004)(denial of motions to dismiss affirmed); *Limone v. United States*, 497 F.Supp. 2d 143 (D.Mass. 2007)(judgment and award of damages for wrongful imprisonment).

*Commonwealth v. Daniels*, 445 Mass. 392, 402-403 (2005). Moreover, in allowing the motion for new trial the Superior Court concluded that the evidence that was not disclosed was material and exculpatory and should have been disclosed, even though certain pretrial discovery motions were denied. *See* Exhibit B at p. 5. The defendants cite *Commonwealth v. Lewinski*, 367 Mass. 889, 900-903 (1975), for the proposition that an accused was not entitled to written statements of witnesses in the absence of a showing of "particularized need" until 1975, however, that case specifically notes that the obligation to disclose witness statements is "cumulative to the obligation to turn over exculpatory material within the doctrine of *Brady v. Maryland*, . . ." *Id* at 902 & n. 9.

Finally, the defendants argue that the "Suffolk Superior Court unequivocally found that the Plaintiff was not entitled to an order granting his pre-trial motion for disclosure of exculpatory evidence." D.Mem. at 11-12. There was no such finding. *See* Exhibit B.[5] In fact the Superior Court found that the evidence was

---

[5]   The Superior Court found that Mr. Adams "was deprived of access to the criminal records of Commonwealth witnesses, witness statements, police reports, and notes regarding the criminal investigation. Mr. Adams requested access to such evidence in advance of trial, but was denied such access by the Court and by the Commonwealth." Exhibit B at 2. In the course of Mr. Adams' appeal the Supreme Judicial Court did not find prejudice, in the failure to produce certain evidence because the SJC was unaware of the exculpatory nature of the undisclosed materials. Mr. Adams had no independent ability to gain access to such evidence through his own investigation where it was not disclosed by the Commonwealth or ordered by the Court. Where the Commonwealth did not fulfill its obligation to disclose exculpatory evidence it did not become available to Mr. Adams until discovery orders issued in the post-conviction proceedings many years after the date of trial. See Exhibit B at pp. 2-5. The Superior Court never "unequivocally found" that Mr. Adams was not entitled to an order granting disclosure of exculpatory evidence.

material and exculpatory and that it "should have been disclosed by
the Commonwealth to the defense pursuant to the Fifth, Sixth, and
Fourteenth Amendments to the United States Constitution and Article
12 of the Massachusetts Declaration of Rights." Exhibit B at p. 5.

2.    The complaint does allege that the defendants caused the
      plaintiff to suffer Constitutional deprivations.

The defendants argue that the defendants did not cause any
harm to Mr. Adams because the Commonwealth objected to providing
certain evidence and the trial court did not order such
disclosures.  The defendants appear to argue that it is either the
fault of the Commonwealth or the fault of the trial court that this
evidence was never disclosed. D.Mem. at 11-12.  As noted above, the
Commonwealth has an obligation to disclose *Brady* material even if
the trial court denies a motion for discovery. *Commonwealth v.
Daniels*, 445 Mass. 392, 402-403 (2005).    Where the police
intentionally fail to disclose exculpatory evidence to the
prosecutor liability may arise under § 1983. *See Brady v. Dill,* 187
F.3d 104, 114 (1st Cir. 1999); *Maher v. Town of Ayer*, 463 F.Supp.
2d 117, 122 (D.Mass. 2006); *Jones v. Chicago*, 856 F.2d 985, 995
(7th Cir. 1988).  The defendants should not be permitted to escape
liability because their efforts to suppress exculpatory evidence
were so successful for so long.

C.    <u>Counts I and III are not barred by the doctrine of
      collateral estoppel</u>.

The defendants argue that the doctrine of collateral estoppel
prevents Mr. Adams from claiming that exculpatory evidence should

15

have been provided to him prior to the trial in his criminal case. This argument is based upon the denial of certain pre-trial discovery motions, and a misreading of the memorandum of decision allowing the motion for new trial D.Mem. 13-14.  This argument fails to acknowledge that the Superior Court has now entered a final order  allowing a motion for new trial and expressly finding that the exculpatory evidence "should have been disclosed by the Commonwealth to the defense pursuant to the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article 12 of the Massachusetts Declaration of Rights." Exhibit B at 5. The fact that Mr. Adams had a constitutional right to access to such evidence has been litigated and determined "by a valid and final judgment." *See Johnson v. Mahoney*, 424 F.3d 83, 93 (1st Cir. 2005).  The Superior Court did not find that Mr. Adams was not entitled to receive exculpatory evidence prior to trial but only that he was prevented and foreclosed from receiving it and could not obtain it through his own investigation. Exhibit B at 2-5.  In fact, the collateral estoppel doctrine may affirmatively establish that the exculpatory evidence was withheld from Mr. Adams in violation of his civil and constitutional rights. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329-331 (1979); *Acevedo-Garcia v. Monroig*, 351 F.3d 547, 572-577 (1st Cir. 2003).

D.   There is no basis to conclude as a matter of law that
     Mr. Whalen is entitled to qualified immunity.

A finding of qualified immunity is not warranted here based upon the three part inquiry employed in this circuit. *See Limone v.*

*Condon*, 372 F.3d 39, 44 (1st Cir. 2004).  First, the "plaintiff's allegations, if true, establish constitutional violations." *Id.* The plaintiff has alleged the constitutional basis of his claims. *See* ¶ 40, 70 & 80.  The complaint alleges that *Brady* material, and exculpatory evidence was withheld, and that as a result the case proceeded based upon incomplete, misleading, and false evidence, ¶ 66-69, 75-80, and that Detective Whalen "deliberately and recklessly engaged improper investigation, improper suppression of exculpatory evidence, and improperly encouraged the introduction at trial court proceedings of incomplete, misleading and false evidence." *See* ¶ 66-67.  The  Superior Court found that previously undisclosed evidence was "material and exculpatory evidence" and that it "should have been disclosed" based upon constitutional principles. Exhibit B at p. 5.

Second, the constitutional right to receive exculpatory evidence, to a fair trial, and to due process of law, were "clearly established at the time of the putative violation."  The *Brady* case was decided in 1963, and *Giglio* was decided in 1972. *See* pp. 9-15 above.  The role of police in providing such exculpatory evidence to prosecutors was clear shortly after the *Brady* decision. *See* *Barbee v. Warden*, 331 F.2d 842, 846 (4th Cir. 1964).  In evaluating a case arising from police misconduct taking place in or about 1967, the First Circuit noted "if any concept is fundamental to our American system of justice, it is that those charged with upholding

the law are prohibited from fabricating evidence and framing individuals for crimes that did not commit.  Actions taken in contravention of this prohibition necessarily violate due process. . ." *Limone, supra,* at 44-45.  The same is true here where the actions of the police undermined the constitutional operation of the criminal justice system and prevented the defendant from having access to evidence which "casts real doubt upon the justice of the conviction" and where there was a "substantial risk that the jury would have reached a different conclusion had the evidence been admitted at trial." Exhibit B at 5.

Third, an "objectively reasonable official would have believed that the action taken violated that clearly established constitutional right."  Neither Detective Sergeant Whalen, who was in charge of the homicide investigation, nor any other "objectively reasonable official" would have believed that he was free to suppress exculpatory evidence, withhold it from the prosecutor, and to allow a case to proceed to trial based upon incomplete, misleading, and false evidence. *See* ¶ 34-36, 39-40.  Based upon this record there is no basis to conclude that there is qualified immunity.

D.    The complaint alleges a cause of action under *Monell*.

The complaint alleges that (1) there existed a municipal custom or policy of deliberate indifference to the commission of the constitutional violation complained of; and (2) this custom or policy was the cause of and moving force behind the particular

constitutional deprivation of which the plaintiff is complaining. *See Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978).  Count III of the Amended Complaint, against the City of Boston, entitled "Monell Claim" alleges a cause of action for municipal liability under 42 U.S.C. § 1983.  The complaint clearly alleges that by the time Mr. Adams was arrested the City of Boston had a policy, custom or practice of failing to properly discipline, supervise and train officers, and failing to assure that exculpatory evidence would be disclosed to the District Attorney.  ¶ 75-76.  This policies customs and practices were adopted and were in effect, intentionally or with a reckless disregard for their consequences, knowing that such policies would lead to depriving individuals of their constitutionally guaranteed civil rights. ¶ 79.  The policies, practices and customs of the City of Boston caused Mr. Adams to suffer deprivations of his rights as guaranteed by the Constitution. ¶ 80.

The Amended Complaint describes certain exculpatory evidence that was not disclosed in this case and the pattern of non-disclosure in this case. ¶ 19, 22, 23, 24, 35-36.  Without the benefit of discovery other instances of due process violations providing evidence of deliberate indifference to the rights of criminal defendants are also alleged. *See* ¶ 34-57.  Significantly, the defendants argued at some length that the police have absolutely no obligation to disclose exculpatory evidence. D.Mem. at 8-12.  Now in the context of arguing the *Monell* claim the City

does not dispute that it failed to disclose exculpatory evidence in this or other cases, nor does it dispute that it had a policy of non-disclosure.  It argues that the complaint does not describe facts supporting this policy in sufficient detail.  It is submitted that the Amended Complaint when viewed in accordance with the standards governing motions to dismiss states a claim under *Monell* upon which relief may be granted.

V.    Conclusion

    For the above stated reasons the motion to dismiss should be denied.

                          Submitted by the plaintiff
                          Laurence M. Adams, by his
                          attorney,


                          John J. Barter
                          Attorney at Law
                          (B.B.O. No: 032150)
                          Third Floor
                          83 Atlantic Avenue
                          Boston, MA 02110
                          (617) 367-2545

December 14, 2007

CERTIFICATE OF SERVICE
    The above document was this day served by first class mail, and electronically, upon counsel for the defendants, City of Boston and Estate of Francis Whalen:

Hugh R. Curran, Esq.
Bonner, Kiernan, Trebach
& Crociata, LLP
200 Portland Street
Boston, MA 02114

    Signed under the penalties of perjury this 14th day of December, 2007.
                          John J. Barter

20

# EXHIBIT A

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS.

PROBATE AND FAMILY
COURT DEPARTMENT
NO: 93 P 2394 E1

---

               )

RE:  FRANK J. WHALEN      )
a/k/a FRANCIS J.B. WHALEN   )

---            )



## PRESENTATION OF CLAIM
## PETITION AND BILL OF NOTICE
## M.G.L. Ch. 197 Sec. 9, 10 and 13

   Notice is hereby given, pursuant to the provisions of M.G.L. Ch. 197 Secs. 9, 10, and 13, that a claim has been made against the Estate of Francis Whalen in the United States District Court for the District of Massachusetts, by Laurence M. Adams, *Adams v. City of Boston, et. al.*, U.S.D.C. No: 07-CA-10698 RGS, and that Mr. Adams seeks appropriate relief against the assets of the estate.  In support hereof, Mr. Adams states as follows:

   1.  It is respectfully represented that Laurence M. Adams, of 8 Ocean View Avenue, Plymouth, MA 02360, has an unliquidated claim against the estate which did not accrue until more than one year after the date of death of the deceased.  The claim has been presented in a civil action entitled *Laurence M. Adams v. City of Boston, et.al.*, United States District Court for the District of Massachusetts Civil No: 07-CA-10698 RGS.  That civil action arises under 42 U.S.C. Sec. 1983, and presents a civil rights claim against the estate of Francis J. Whalen, and others.  The Executrix of the Estate has been duly served with the Complaint

1

and Civil Action Summons in that civil action.

   2.   It appears from the record in this Probate and Family
Court matter that the estate has not been fully administered, as
there appears to be no order on file closing the estate, and no
final account.

   3.   The claim of Mr. Adams could not have been presented
within one year of the date of death, because it was a claim
under 42 U.S.C. Sec. 1983, which did not accrue until a
subsequent date, when a conviction against Mr. Adams was vacated
by a motion for new trial and the Commonwealth elected not to
re-prosecute by entering a *nolle prosequi* in the Suffolk Superior
Court on June 7, 2004. The civil action was filed on April 11,
2007, within three years of the decision of the Superior Court
allowing the motion for new trial, and well before the date of
the entry of the *nolle prosequi.* See *Heck v. Humphrey*, 512 U.S.
477, 486-487 (1994), *Johnson v. Evans*, 223 F.Supp. 2d 357, 360-
361 (D. Mass. 2002)(denying motion to dismiss arising from claims
that Boston police officers withheld exculpatory evidence). The
civil action claim was brought within three years of the date
that the claim accrued the claimant is not chargeable with
culpable neglect in not filing the claim within one year of the
death. M.G.L. Ch. 197 Sec. 10.

   Wherefore, it is respectfully submitted that justice and
equity require that the claims against the estate be allowed to
proceed, and that such claims not be barred by the provisions of

M.G.L. Ch. 197 Sec. 9, and that the estate remain open until the above referenced claim in the United States District Court is resolved by a final judgment, and that this Court order the Executrix to retain all remaining assets of the estate until the claim in the United States District Court is reduced to a judgment, and is a liquidated claim that may then be presented for payment as appropriate and necessary at that time. *See* M.G.L. Ch. 197 Sec. 13.

> Respectfully submitted by
> the attorney for
> Laurence M. Adams
>
> JOHN J. BARTER
> ATTORNEY AT LAW
> B.B.O. 032150
> THIRD FLOOR
> 83 ATLANTIC AVENUE
> BOSTON, MASSACHUSETTS   02110
> (617) 367-2545

December 5, 2007

## CERTIFICATE OF SERVICE

A copy of the above document was served upon the Commonwealth by delivering a copy thereof, by first class mail, as follows:

> Robert J. Berks, Esq.
> 203 Elm Street
> Brockton, MA 02301
> (508) 588-4553

Signed under the penalties of perjury this 5th  day of December, 2007.

John J. Barter

# EXHIBIT B

**Commonwealth v. Laurence Adams**

**74652**

**SUPERIOR COURT OF MASSACHUSETTS, AT SUFFOLK**

**2004 Mass. Super. LEXIS 225**

**April 15, 2004, Decided**
**May 20, 2004, Filed**

**PRIOR HISTORY:** Commonwealth v. Adams, 374 Mass. 722, 375 N.E.2d 681, 1978 Mass. LEXIS 894 (1978)

**DISPOSITION:**    [*1]  The Renewed and Revised Motion For Postconviction Relief is allowed, the convictions are vacated, and a new trial is ordered.

**JUDGES:** Robert A. Mulligan Associate Justice, Superior Court.

**OPINION BY:** Robert A. Mulligan

**OPINION**

MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF

I. INTRODUCTION

The defendant, Laurence Adams, filed a Renewed And Revised Motion For Postconviction Relief. Related discovery motions, and several memoranda and appendixes in support of that motion were also filed and incorporated therein. In the course of postconviction proceedings this Court ordered disclosure of criminal records of Commonwealth witnesses as well as discovery of other documents in the possession of the Commonwealth and the Boston Police Department. At a hearing on May 29, 2002, transcripts of trial and post-trial proceedings, pleadings, memoranda, appendixes, affidavits and documentary exhibits were offered into evidence, and all such documents as submitted by the Defendant and the Commonwealth were accepted into evidence without objection. The findings of fact herein are based upon those documentary submissions, the record in this case, and facts that are uncontested on the record.

[*2]  While this is not the first Motion For New Trial filed by Mr. Adams, he has for the first time presented newly discovered evidence in the form of the prior criminal records of Commonwealth witnesses, police notes and reports showing prior inconsistent statements of a key Commonwealth witness, and witness statements that were previously unavailable to the defendant, none of which were part of the original record in this case. A review of the full record leads this Court to conclude that the convictions for murder in the first degree and armed robbery must be vacated, and a new trial must be ordered.

II. FINDINGS AND RULINGS

A. Threshold Issues on Postconviction Relief

Rule 30(c) provides that any grounds for relief that are not raised in an original or amended motion pursuant to Rule 30 are deemed to be waived "unless the judge in the exercise of discretion permits them to be raised in a subsequent motion, or unless such grounds could not reasonably have been raised in the original or amended motion." As in any case where postconviction relief is sought, ". . . interests of finality and the fair administration of justice must be weighed in addition to 'the ever-present concern that [*3]  justice not miscarry for the defendant.' " *Commonwealth v. Curtis*, 417 Mass. 619, 623, 632 N.E.2d 821 (1994); *Commonwealth v. Azar*, 435 Mass. 675 - 676, 760 N.E.2d 1224 (2002)

The threshold question here is whether the grounds that Mr. Adams has raised are barred by the waiver doctrine. Claims that have been waived will not be reviewed except in "extraordinary cases where, upon sober reflection, it appears that a miscarriage of justice might otherwise result." *Commonwealth v. Harrington*, 379 Mass. 446, 449, 399 N.E.2d 475 (1980) See also *Commonwealth v. LeFave*, 430 Mass. 169, 169-73, 714 N.E.2d 805 (1999). Mr. Adams has raised a number of issues, some based upon newly discovered evidence, some based upon developments in the law, and some based upon the trial record. These claims have been considered in connection with the governing principles of the waiver doctrine, and this Court finds "upon sober reflection," that this is an "extraordinary

case" where in the absence of postconviction relief, a "miscarriage of justice" will result. *Id.*

Certain grounds now raised by Mr. Adams, including grounds based upon newly discovered evidence, "could not reasonably have been raised in the [*4] original or amended motion." See Rule 30(c) Mass.R.Crim.P. The newly discovered evidence in this case is of a significant character not only because of the direct bearing that such evidence would have had upon the trial proceedings, but also because it lends new perspective on issues that Mr. Adams sought to raise in previous proceedings.

Pursuant to Rule 30 Mass.R.Crim.P., further consideration of the issues in this case is warranted both in the exercise of discretion, and because certain grounds could not have been raised in the original or amended motion.

B. Rulings Regarding Newly Discovered Evidence

"A defendant seeking a new trial, on the ground of newly discovered evidence must establish both that the evidence is newly discovered and that it casts real doubt on the justice of the conviction." *Commonwealth v. Grace*, 397 Mass. 303, 305, 491 N.E.2d 246 (1986). The evidence said to be new not only must be material and credible, *Commonwealth v. Brown*, 378 Mass. 165, 172, 390 N.E.2d 1107 (1979), ". . . but must also carry a measure of strength in support of the defendant's position." *Grace*, 397 Mass. 303 at 304. The issue is whether there is a substantial risk [*5] that the jury would have reached a different conclusion had the evidence been admitted at trial, *Commonwealth v. Markham*, 10 Mass.App.Ct. 651, 654, 411 N.E.2d 494 (1980), and whether the new evidence "would probably have been a real factor in the jury's deliberations." *Grace*, 397 Mass. at 306, citing *Davis v. Boston Elevated Ry.*, 235 Mass. 482, 495-96, 126 N.E. 841 (1920).

Based upon this standard, the evidence to which the defendant points in this case is newly discovered. The defendant was deprived of access to the criminal records of Commonwealth witnesses, witness statements, police reports, and notes regarding the criminal investigation. Mr. Adams requested access to such evidence in advance of trial, but was denied such access by the Court and by the Commonwealth. Record Appendix at 252. In the course of trial proceedings counsel for Mr. Adams renewed his request for access to criminal records. TR. Vol 3, 273-74. The Commonwealth argued that while such evidence may "border on being exculpatory" the disclosure of such

records would violate the newly-adopted CORI law. Record Appendix at 249.

This issue of being deprived access to criminal records was raised [*6] before the Supreme Judicial Court, but at that time the record did not show the actual nature of the criminal records. *Commonwealth v. Adams*, 374 Mass. 722, 732-33, 375 N.E.2d 681 & n.6 (1978). The Supreme Judicial Court noted that it could not find that the defendant was prejudiced by being deprived of such evidence, in part because the Court did not have that evidence in the record. *Id.* Now the evidence is in the record. This Court ordered the production of criminal records in these postconviction proceedings. There is nothing in the record to indicate that Mr. Adams had been provided with such records at the time of trial, at the first motion for new trial, or prior to the pending proceedings, or that Mr. Adams had actual access to such evidence at an earlier time.

Evidence which is not lawfully available to a defendant at the time of trial, if it later becomes available, is "newly discovered evidence." *Commonwealth v. Figueroa*, 422 Mass. 72, 661 N.E.2d 65 (1996); *Commonwealth v. Daye*, 411 Mass. 719, 734-35, 587 N.E.2d 194 (1992) (where a defendant had no right or access to a police report prior to trial, the report is treated as newly discovered evidence). Prior to trial [*7] the Commonwealth objected to producing criminal records of its witnesses, and witness statements, and the trial court denied the defendant's motion for such access. With regard to police reports, the record shows that the Commonwealth offered to produce only the "journal entry." Record Appendix at 255, Third Supplemental Record Appendix at 24. These documents which are at the foundation of trial preparation in the typical criminal case, were not provided to, and were not available to Mr. Adams in advance of trial.

With regard to criminal records, the Supreme Judicial Court suggested that there may have been another manner of obtaining this information. *Commonwealth v. Adams*, 374 Mass. 722, 732-33, 375 N.E.2d 681 (1978). The issue of access to the alphabetical index of records, organized by the names of the defendants, has resulted in litigation in the Courts of the Commonwealth, and later, in the Federal Courts. In 1979 the Supreme Judicial Court found that it was not unconstitutional to prohibit a newspaper access to an alphabetical index of the names of criminal defendants. *New Bedford Standard-Times Publishing Company v. Clerk of the Third District Court of Bristol*, 377 Mass. 404, 387 N.E.2d 110 (1979). [*8] 1 The United States District Court for the District of Massachusetts found that the CORI

law was unconstitutional in certain respects. *Globe Newspaper Co. v. Fenton*, 819 F. Supp. 89 (D.Mass 1993). It was found that the trial courts of the Commonwealth ". . . acting pursuant to a relatively recent privacy regime, the Criminal Offender Records Information System, Mass. Gen. Laws Ch. 6 Sec. 167-178B ('CORI') . . . decline to permit unrestricted access to the alphabetical indices of parties, a convenient--formerly public--record which the Commonwealth has required trial Courts to maintain since before ratification of the United States Constitution." *Id.* at 90. The Court went on to rule as follows: "I will allow the motion of the plaintiff by declaring unconstitutional that aspect of the Massachusetts scheme pursuant to which the defendants and their subordinates have acted to deny access to the alphabetical indices maintained by courts." *Id.* at 91. The Trial Court of the Commonwealth, which was the defendant in that case, did not appeal this finding that the CORI law was unconstitutional. [*9] As these cases illustrate, the CORI law did result in Court procedures which denied access to criminal case information. When the trial Court declined to order access to criminal record information in this case, Mr. Adams did not have access to such information.

> 1    The concurring opinion of Justice Abrams, joined by Justices Quirico and Liacos, recognized that "CORI enshrouds certain records of proceedings in the judicial branch in secrecy and darkness. The trial judge found that under that statute access to records of past proceedings is possible only by 'searching hundreds of thousands of docket entries . . . at tremendous time and expense.' " *Standard-Times*, at 377 Mass. 418.

After the decision in the *Boston Globe* case Mr. Adams' counsel did obtain access to some court records of criminal cases and convictions of Commonwealth witnesses. Upon review of discovery motions which were supported by reference to those records, this Court ordered that full criminal records of Commonwealth witnesses [*10] be disclosed to Mr. Adams. Where in the absence of a court order, Mr. Adams did not have lawful access to the criminal records of the Commonwealth witnesses until after trial, and after the filing of the first Motion for New Trial, those records are newly discovered. Similarly, where in the absence of a court order the Commonwealth did not disclose police reports, witness statements, and records of investigation, those documents are also newly discovered. See *Commonwealth v. Figueroa*, 422 Mass. 72, 661 N.E.2d 65 (1996); *Commonwealth v. Daye*, 411 Mass. 719, 734-

35, 587 N.E.2d 194 (1992). The Court concludes that these records could not have been obtained at an earlier point in time. The record shows that the defendant properly sought such access by filing motions with the Court, the Commonwealth objected, and the trial court denied the motions. The defense raised this matter again prior to the testimony of Wyatt Moore, and the Court again denied access to such evidence. TR. Vol 3, at 273-74. There is no reason to believe that the trial judge, who heard the first Motion for New Trial, would have allowed a renewed motion for access to these records where such a request had been denied [*11] prior to trial and during trial. The defendant did not have the ability to obtain these records to support prior motions for new trial or his direct appeal. In the context of these post-conviction proceedings defense counsel pursued access to such records for years through correspondence and requests under the Public Records Act, and the Commonwealth opposed producing such information at every stage, as shown by the extensive correspondence which is now part of the record. The Commonwealth at all times had access to these documents, but opposed providing them to the defendant, even though the assistant district attorney at trial conceded "I personally feel that that evidence borders on exculpatory." Record Appendix at 249.

In addition to being newly discovered, the evidence is material and credible. Mr. Adams did not have the benefit of these records to use for purposes of cross examining Commonwealth witnesses and in otherwise developing his defense. The defendant did not impeach any witness based upon prior convictions as permitted by M.G.L. Ch. 233, Sec. 21. However, the Commonwealth had access to the criminal records of the defense witnesses, and did impeach [*12] those witnesses pursuant to M.G.L. Ch. 233, Sec. 21. The Commonwealth, in closing argument, emphasized the fact that defense witnesses had criminal records, and should not be believed, but the defendant was denied the opportunity to fully pursue the opportunity to impeach Commonwealth witnesses on the same grounds.

Furthermore, the defense was not able to cross examine Wyatt Moore and Susie Moore about their serious pending cases and what concessions each expected from the Commonwealth because of their cooperation. The court notes that the day after the conclusion of the Adams trial the pending cases against Wyatt Moore and Susie Moore were resolved. Wyatt Moore pled guilty to two serious firearms charges and armed robbery. He received three years concurrent probation on each. Two escape charges were filed without a change of plea upon the motion of the

Commonwealth. Susie Moore's three serious juvenile complaints were dismissed at the recommendation of the assistant district attorney.

The trial record did not show Lynne Susie Moore to have any record of past criminal involvement. The record now shows that Ms. Moore had serious charges, including delinquency [*13] by reason of attempted murder, and armed assault in a dwelling. Record Appendix at 123-31. In the case of Ms. Moore, her pending cases and convictions arose from the Juvenile Court. There would typically be no access to such records absent a Court Order. Access to juvenile records for purposes of impeaching Commonwealth witnesses is required by the United States Constitution. *Davis v. Alaska*, 415 U.S. 308, 316-17, 39 L. Ed. 2d 347, 94 S. Ct. 1105 (1974); *Commonwealth v. Franklin*, 366 Mass. 284, 290-91, 318 N.E.2d 469 (1974). These offenses were on appeal at the time of the Adams trial, yet there were no questions of Ms. Moore as to whether she was offered any promises, inducements, or rewards in exchange for her testimony, or whether she hoped to receive a more favorable Commonwealth recommendation based upon her testimony in this case. If the jury had known of these criminal matters it may well have affected their determination as to the credibility of this Commonwealth witness.

Records that are now part of the record show that Wyatt Moore, a chief witness for the Commonwealth, made inconsistent statements about the "admissions" of Laurence Adams that were alleged to have been [*14] made in a private home in Dorchester in December of 1972. These "admissions" were at the core of the Commonwealth's proof and theory of the case. If the defense had access to the police notes, and police reports, the grand jury minutes, and the probable cause testimony, the inconsistencies and changes in Wyatt Moore's descriptions of the alleged admissions of Laurence Adams could have been pointed out to the jury. While each account places Mr. Adams at the scene of the crime, the variations in the statements are significant, and the defense could have argued that the jury should not credit any of the versions of the story as told by Mr. Moore. Notes of the first police contact with Mr. Moore on March 15, 1973 indicate that Mr. Moore initially told the police that Mr. Adams told him that Warren Ambers had beaten the victim. See Third Supplemental Record Appendix at 49. By the time of trial Mr. Moore testified that Mr. Adams did not tell him who did the beating. TR. Vol. 3, at 311. That first set of notes states that, according to Mr. Moore, Mr. Adams said nothing about anything being stolen from the scene. At trial,

however, Mr. Moore testified that he was told about such stolen property. [*15] TR. Vol. 3 at 312.

It is significant that the statement evolved after Mr. Moore had conversations with Warren Ambers at the Billerica House of Correction. However, at trial Mr. Moore did not acknowledge that he had discussed the matter with Warren Ambers. TR. Vol. 3, at 321-36. The trial court in its instructions to the jury suggested that the jury evaluate how Mr. Moore would have learned about the facts if he did not learn them from Mr. Adams. TR. Vol 6, 728-29. The Police Report dated April 26, 1973 would have allowed the defense to address this question, and it would have allowed the defense to argue that Mr. Moore learned these facts from Warren Ambers. Third Supplemental Record Appendix at 30.

The police investigation files, which were not available to the defense prior to trial, could have been used to impeach Wyatt Moore, Lynne Moore, and Sergeant Whalen. If the defense had access to the contemporaneous notes of Sergeant Whalen, and reports which were addressed to him, he too could have been questioned about the evolution of the statements of Wyatt Moore.

If the defense had access to full criminal records of Wyatt Moore it could have been established that Mr. Moore was held [*16] at the Deer Island House of Correction for much of the month of December 1972, until his escape. These records would have impeached the probable cause testimony in which Mr. Moore stated that he heard the "admissions" from Mr. Adams in the "second week of December" of 1972. Similarly, the April 26, 1973 Police Report would have impeached Mr. Moore's testimony that he had discussed this matter only with Mr. Adams and in an interview with Sergeant Whalen at Deer Island in March 1973. The report shows a separate interview with other police officers, and directly states that Mr. Moore learned new information from Warren Ambers. Third Supplemental Record Appendix at 30.

The record now contains evidence that Warren Ambers or Harry Ambers was the person who actually struck and killed Mr. Corry. Mr. Moore initially told the police that Adams told him that Warren Ambers had hit Mr. Corry. Record Appendix at 49. However at trial Mr. Moore said that Mr. Adams did not say which person had beaten Mr. Corry. TR. Vol 3 at 311. While there can be joint enterprise liability when a number of people participate in an offense, access to evidence of the Wyatt Moore's changing story would have bolstered [*17] the defense effort to undermine the credibility of the Commonwealth's key witness.

A newly discovered transcribed statement given by Mr. Cahill to Sergeant Whalen indicates that Harry Ambers bragged about committing the offense with his brother. Third Supplemental Record Appendix at 72-79. That statement indicates that a third person had much lesser involvement and "just stood there." *Id.* If this statement, which was not disclosed to the defense, had been disclosed in advance of trial, then the defense could have sought to introduce evidence that Harry Ambers was the person who committed the offense, that third person was merely present, and therefore could not be found liable as a joint venturer. Furthermore, evidence that another person was the perpetrator is ordinarily admissible as long as it "has a rational tendency to prove the issue," is not "too remote or too speculative," and does not cause undue jury confusion. See *Commonwealth v. Rosa*, 422 Mass. 18, 22, 661 N.E.2d 56 (1996); *Commonwealth v. Keizer*, 377 Mass. 264, 267, 385 N.E.2d 1001 (1979).

The newly discovered evidence "casts real doubt on the justice of the conviction." There is a "substantial risk that the jury [*18] would have reached a different conclusion had the evidence been admitted at trial." *Commonwealth v. Grace*, 397 Mass. 303, 305, 491 N.E.2d 246 (1986); *Commonwealth v. Fitzgerald*, 402 Mass. 517, 524 N.E.2d 72 (1988).

C. Rulings Regarding Exculpatory Evidence

Newly discovered evidence in this case constitutes material exculpatory evidence that should have been disclosed by the Commonwealth to the defense pursuant to the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article 12 of the Massachusetts Declaration of Rights. See *Brady v. Maryland*, 373 U.S. 83, 87, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963); *Kyles v. Whitley*, 514 U.S. 419, 437-38, 131 L. Ed. 2d 490, 115 S. Ct. 1555 (1995); *U.S. v. Bagley*, 473 U.S. 667, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1986); *Commonwealth v. Tucceri*, 412 Mass. 401, 589 N.E.2d 1216 (1992); *Commonwealth v. Gallarelli*, 399 Mass. 17, 502 N.E.2d 516 (1987); *Commonwealth v. Ellison*, 376 Mass. 1, 379 N.E.2d 560 (1978) (convictions for armed robbery and felony murder overturned). Evidence "tending to show a witness's bias, prejudice, or motive to lie is so significant that it is not considered a mere collateral matter but is deemed [*19] exculpatory evidence that may be established by extrinsic proof as well as by impeachment through cross examination." *Commonwealth v. O'Neil*, 51 Mass.App.Ct. 170, 178-79, 744 N.E.2d 86 (2001), citing *Commonwealth*

*v. DeBrosky*, 363 Mass. 718, 727, 297 N.E.2d 496 (1973); *Commonwealth v. Haywood*, 377 Mass. 755, 760, 388 N.E.2d 648 (1979); *Commonwealth v. Brown*, 394 Mass. 394, 397, 476 N.E.2d 184 (1985); *Commonwealth v. Schand*, 420 Mass. 783, 792-93, 653 N.E.2d 566 (1995); *Commonwealth v. Hamilton*, 426 Mass. 67, 72, 686 N.E.2d 975 (1997); *Commonwealth v. Gabbidon*, 17 Mass.App.Ct. 525, 531, 459 N.E.2d 1263 (1983); *Commonwealth v. Hall*, 50 Mass.App.Ct. 208, 212, 736 N.E.2d 425 (2000); *Giglio v. United States*, 405 U.S. 150, 154-55, 31 L. Ed. 2d 104, 92 S. Ct. 763 (1972); *Davis v. Alaska*, 415 U.S. 308, 320, 39 L. Ed. 2d 347, 94 S. Ct. 1105 (1974); *United States v. Abel*, 469 U.S. 45, 52, 83 L. Ed. 2d 450, 105 S. Ct. 465 (1984); Liacos, Massachusetts Evidence, Secs. 6.7.1 & 6.9 (7th Ed. 1999); Flannery, Massachusetts Evidence: A Courtroom Reference, Sec. 11.3 (MCLE 1999).

The Commonwealth had possession of certain evidence that it described as bordering on exculpatory, but it opposed [*20] producing such evidence. The trial court did not require the evidence to be disclosed. Record Appendix at 252, TR. Vol. 3 at 273-74. Nevertheless, the Commonwealth had an obligation to produce exculpatory evidence. *Id.* Some of this newly discovered evidence was disclosed in these postconviction proceedings from Police files and may not have been in the files of the District Attorney at the time of trial, but the exculpatory evidence should still have been disclosed. The Commonwealth is presumed to have knowledge of all information in the hands of the investigating police departments. The prosecutor "has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437, 131 L. Ed. 2d 490, 115 S. Ct. 1555 (1995). The Commonwealth has the affirmative obligation to disclose information, including information in the possession of the Police. *Commonwealth v. Martin*, 427 Mass. 816, 696 N.E.2d 904 (1998). The Commonwealth is deemed to be in possession, and is under the obligation to produce such documents, even if the prosecutor never knew of the information and did not have it in his [*21] files. *Commonwealth v. Gallarelli*, 399 Mass. 17, 20, 502 N.E.2d 516, note 4 (1987).

D. Rulings Regarding Conflict of Interest of Counsel

Subsequent to the trial, initial motion for new trial, and appeal in this case, evidence has come to light showing that Mr. Adams was represented by counsel who had a conflict of interest. The conflict of interest issue was raised in a prior Motion for Postconviction Relief, and was resolved

against Mr. Adams. *Commonwealth v. Adams*, 374 Mass. 722, 730-31, 375 N.E.2d 681 (1978). However, when considering the conflict of interest issue on the prior occasions, neither the Superior Court nor the Supreme Judicial Court had access to newly discovered documents showing the nature and extent of the conflict of interest. Mr. Adams has suffered prejudice and a constitutional deprivation of effective assistance of counsel, due to this conflict of interest. See *Commonwealth v. Martinez*, 425 Mass. 382, 681 N.E.2d 818 (1997); *Commonwealth v. Hodge*, 386 Mass. 165, 434 N.E.2d 1246 (1982); *Commonwealth v. Connor*, 381 Mass. 500, 410 N.E.2d 709 (1980); *Commonwealth v. Michel*, 381 Mass. 447, 453, 409 N.E.2d 1293 (1980).

The Sixth Amendment to the United States [*22] Constitution and art. 12 of the Declaration of Rights entitle a defendant to the effective assistance of counsel. A defendant has a right to "untrammeled and unimpaired assistance of counsel free of any conflict of interest and unrestrained by commitments to others." *Commonwealth v. Martinez*, 425 Mass at 387-88, citing *Commonwealth v. Michel*, 381 Mass. at 453, quoting *Commonwealth v. Davis*, 376 Mass. 777, 780-81, 384 N.E.2d 181 (1978). The Supreme Judicial Court has now held that ". . . art. 12 does not require a defendant to demonstrate prejudice, once a genuine conflict has been shown." *Martinez*, 425 Mass. at 388. 2

> 2   The Supreme Judicial Court, in ruling on Mr. Adams' case stated "we have never held that, in the absence of a showing of actual or likely prejudice, joint representation of co-defendants constitutes an automatic denial of effective assistance of counsel." *Adams*, 374 Mass. at 731. The law at this time is that there need not be any showing of "actual or likely" prejudice. *Commonwealth v. Martinez*, 425 Mass. at 388. The issues in this case are being reviewed in this Court's discretion, and in light of the "miscarriage of justice" standard. Mr. Adams should have the benefit of the constitutional right to effective counsel who is not burdened by a conflict of interest, as required by Article 12 of the Declaration of Rights. *Id.*

[*23] The transcript of the "probable cause" hearing, which is now part of the record, shows that Attorney Melvin Silverman represented Warren Ambers, as a co-defendant of Laurence Adams, at that hearing. That hearing resulted in a finding of probable cause against Laurence Adams, and against Harry Ambers, but not against Warren

Ambers. Though the Commonwealth, at trial, presented the case on a theory that Laurence Adams, Warren Ambers, and Harry Ambers were all involved in the offense, care was taken to avoid speaking the name of Warren Ambers at the "probable cause" hearing. For example, in the statement from Harry Ambers, he was asked if anyone was with him in the subway. He answered "Two other people." TR. 8. He was not asked who those people were. As a result, the name of his brother, Warren Ambers, was not mentioned. Similarly, when Wyatt Moore was questioned at the "probable cause" hearing, he was not asked what other people allegedly accompanied Laurence Adams to the subway station. TR. 23-25. The Commonwealth chose not to inquire about Warren Ambers and the District Court found no probable cause. TR. 25.

At the grand jury proceedings, on June 12, 1973, which are now part of the [*24] record, Sergeant Whalen testified that Harry Ambers had placed himself, his brother, and Laurence Adams at the scene of the crime. Supplemental Record Appendix at 364-66. Also, at the Grand Jury, Wyatt Moore testified that Laurence Adams, Harry Ambers, and Warren Ambers, were all involved in breaking into cash boxes in the subway. Grand Jury TR. at 5-6; Supplemental Record Appendix at 364-65. The case against Warren Ambers, the original client of Mr. Silverman in this matter, for his alleged involvement in this homicide was not further pursued by the Commonwealth.

At the time that Attorney Silverman was assigned by the Court to represent Mr. Adams, there was no colloquy on the record in which Mr. Adams waived his right to have counsel who was free from conflicts, or where Mr. Adams was advised of the potential of such a conflict. A defendant must not be put "in the untenable position where he would otherwise 'be put to the burden, perhaps insuperable, of probing the resolve and the possible mental conflict of counsel.' " *Martinez*, 425 Mass. at 388, quoting *Hodge*, 386 Mass. at 169-70.

In this case where there was "probable cause" testimony that Harry [*25] Ambers was at the subway station with two other people, and that one of them struck the victim with a board, one obvious defense would have been to focus on whether the person using the board was Warren Ambers, rather than Laurence Adams. Mr. Silverman, who represented Warren Ambers could not ethically pursue such an investigation or such a defense. Calling Warren Ambers as a witness would have placed Mr. Silverman in the untenable position of calling his own client to testify in the case of another client. *Adams*, 374

Page 7
2004 Mass. Super. LEXIS 225, *

Mass. at 730-31. Another approach to the defense may have been to lay the blame on the Ambers brothers, and to show that Mr. Adams had no involvement at all. Such a defense could not ethically be pursued by Attorney Silverman because he would thereby implicate his former client as a principal actor in a homicide.

The newly discovered March 15, 1973, investigator notes indicate that Mr. Moore initially told the police that Mr. Adams told him that Warren Ambers struck the victim with a "board or stick." Third Supplemental Record Appendix at 49. The newly discovered April 26, 1973 police report states that Mr. Moore learned about the crime from Warren Ambers, [*26] while both were being held in Billerica House of Correction. Moore learned from Warren Ambers that someone was cut on the hand in the course of the crime. The report states: "This is the first time Moore found out about someone having been cut during the break." That report states: "Ambers further told Moore that Mr. Silverman Ambers (Attorney) would help Moore if he would back off on the MBTA job." When Warren Ambers asked Moore if he was "appearing against me" Moore said "No." Third Supplemental Record Appendix at 30. These documents are not conclusive evidence that Mr. Silverman agreed to assist Wyatt Moore at the request of Warren Ambers, but the documents do raise serious questions about the relationships between Warren Ambers, Wyatt Moore, and Mr. Silverman. In the course of trial the Assistant District Attorney stated that Mr. Silverman had also represented Mr. Moore in prior unrelated proceedings. TR. Vol. 3, at 274.

When the "conflict of interest" issue was previously raised, the issue was decided against Mr. Adams. *See Commonwealth v. Adams*, 374 Mass. 722, 730-31, 375 N.E.2d 681 (1978). The newly discovered evidence however casts a new light upon this issue and establishes [*27] that there was a serious and direct conflict of interest of constitutional dimension requiring postconviction relief.

B. Rulings on Other Issues Raised in Postconviction Motions

The issues of fact and law as discussed above establish that postconviction relief is both necessary and appropriate based upon the governing standards of law, to avoid a miscarriage of justice. The defendant has raised a number of additional issues which do not require extensive discussion in light of this Court's rulings as stated above. Collectively, the issues raised here establish that this is the extraordinary case which requires postconviction relief in order to avoid a miscarriage of justice. *Commonwealth v. Azar*, 435 Mass. 675-76 (2002); *Commonwealth v. LeFave*, 430 Mass. 169, 169-73, 714 N.E.2d 805 (1999); *Commonwealth v. Harrington*, 379 Mass. 446, 449, 399 N.E.2d 475 (1980).

ORDER

The Renewed and Revised Motion For Postconviction Relief is ALLOWED, the convictions are vacated, and a new trial is ordered.

Robert A. Mulligan

Associate Justice, Superior Court

Dated: April 15, 2004