UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LAURENCE M. ADAMS,           )
            Plaintiff,       )
                             )
    v.                       )        C.A. NO.: 1:07-cv-10698-RGS
                             )
CITY OF BOSTON,              )
            Defendant.       )

## DEFENDANT'S MOTION FOR
## BIFURCATION OF DISCOVERY AND TRIAL

The Defendant, the City of Boston ("City"), submits this Memorandum of Law in support of its motion for bifurcation of discovery and trial in this civil action into phases: (1) the first to be discovery and trial as to the Plaintiff, Laurence M. Adam's ("Plaintiff"), underlying 42 U.S.C. § 1983 liability claim that exculpatory evidence was withheld from him in violation of his rights under the United States Constitution and that this resulted in an unfair and unconstitutional trial and a wrongful conviction; and (2) the second, if necessary, to be discovery and trial as to Plaintiff's municipal liability claim that the City of Boston maintained a municipal custom or policy of deliberate indifference to the conduct of police officers of failing to disclose exculpatory evidence.

As grounds, the City states that this 42 U.S.C. § 1983 civil rights action involves a single Count pursuant to *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), against the City of Boston and arises from the notorious November 1972 murder of MBTA employee James C. Corry and the subsequent criminal investigation and prosecution which led to Plaintiff's conviction for the Corry homicide on March 13, 1974. In light of nature of this case and for the reasons more fully set forth below, bifurcation of discovery and trial as requested by the City

will achieve the purposes of Rule 42(b) of the Federal Rules of Civil Procedure, in that bifurcation would prevent prejudice, reduce the possibility of juror confusion, promote judicial economy and ensure a fair trial. Indeed, in the event that discovery and trial are not bifurcated as requested herein, the City will undoubtedly incur exorbitant cost and expense for discovery and trial preparation associated with claims involving the state of municipal custom, policy and practice with regard to exculpatory evidence approximately 30 years ago cost and expense that may be avoided altogether if Plaintiff is unable to establish that one or more members of the Boston Police Department intentionally withheld exculpatory evidence from him which in turn caused him to suffer an unfair trial. As further grounds, the City incorporates herein by reference *Memorandum of Law in Support of Defendant's Motion for Bifurcation of Discovery and Trial.*

WHEREFORE, the Defendant, the City of Boston, respectfully requests that this Honorable Court bifurcate discovery and trial in this civil action into phases: (1) the first to be discovery and trial as to the Plaintiff, Laurence M. Adam's, underlying 42 U.S.C. § 1983 claim that exculpatory evidence was withheld from him in violation of his rights under the United States Constitution and that this resulted in an unfair and unconstitutional trial and a wrongful conviction; and (2) the second, if necessary, to be discovery and trial as to Plaintiff's municipal liability claim that the City of Boston maintained a municipal custom or policy of deliberate indifference to the conduct of police officers of failing to disclose exculpatory evidence.

**Defendant,**
**CITY OF BOSTON,**
By its attorneys,


/s/ Hugh R. Curran
Hugh R. Curran (BBO# 552623)
Bletzer and Bletzer, PC
300 Market Street
Brighton, MA 02135
(617) 254-8900
hcurran@bletzerlaw.com

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on the ___ day of August, 2008, I electronically filed with within document with the Clerk of the United States District Court for the District of Massachusetts, using the CM/ECF System.   The following participants have received notice electronically:

**For Plaintiff Laurence M. Adams,**
John J. Barter
83 Atlantic Avenue
Boston, MA 02110-3711
barterJ@msn.com


/s/ Hugh R. Curran

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| LAURENCE M. ADAMS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. NO.: 1:07-cv-10698-RGS |
| | ) | |
| CITY OF BOSTON, | ) | |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION
## FOR BIFURCATION OF DISCOVERY AND TRIAL

The Defendant, the City of Boston ("City"), submits this Memorandum of Law in support of its motion for bifurcation of discovery and trial in this civil action into phases: (1) the first to be discovery and trial as to the Plaintiff, Laurence M. Adam's ("Plaintiff"), underlying 42 U.S.C. § 1983 liability claim that exculpatory evidence was withheld from him in violation of his rights under the United States Constitution and that this resulted in an unfair and unconstitutional trial and a wrongful conviction; and (2) the second, if necessary, to be discovery and trial as to Plaintiff's municipal liability claim that the City of Boston maintained a municipal custom or policy of deliberate indifference to the conduct of police officers of failing to disclose exculpatory evidence.

As grounds, the City states that this 42 U.S.C. § 1983 civil rights action involves a single Count pursuant to *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), against the City of Boston and arises from the notorious November 1972 murder of MBTA employee James C. Corry and the subsequent criminal investigation and prosecution which led to Plaintiff's conviction for the Corry homicide on March 13, 1974. In light of nature of this case and for the reasons more fully set forth below, bifurcation of discovery and trial as requested by the City

will achieve the purposes of Rule 42(b) of the Federal Rules of Civil Procedure, in that bifurcation would prevent prejudice, reduce the possibility of juror confusion, promote judicial economy and ensure a fair trial. Indeed, in the event that discovery and trial are not bifurcated as requested herein, the City will undoubtedly incur exorbitant cost and expense for discovery and trial preparation associated with claims involving the state of municipal custom, policy and practice with regard to exculpatory evidence approximately 30 years ago cost and expense that may be avoided altogether if Plaintiff is unable to establish that one or more members of the Boston Police Department intentionally withheld exculpatory evidence from him which in turn caused him to suffer an unfair trial. As further grounds, the City states as follows:

## I.   BACKGROUND

This is a civil rights action consisting of a single Count pursuant to 42 U.S.C. § 1983 and *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), against the City in which Plaintiff alleges that he was wrongfully convicted of armed robbery and first degree murder for the murder of MBTA employee James C. Corry. *See* Amended Complaint. Specifically, Plaintiff alleges that exculpatory evidence was withheld from him in violation of his rights under the United States Constitution and that this resulted in an unfair and unconstitutional trial and a wrongful conviction. *Id.* Plaintiff further alleges that this wrongful conviction was the result of a municipal custom or policy of deliberate indifference to the conduct of police officers of failing to disclose exculpatory evidence. *See id.* at ¶¶ 45-47, 56-58, 75-81.

Of significance, on November 27, 1972, James C. Corry suffered life threatening injuries as a result of a blunt force trauma, which ultimately resulted in his death. *See* Amended Complaint at ¶ 12. On March 13, 1974, Plaintiff was convicted of the offenses of armed robbery and murder in the first degree for the murder of Mr. Corry. *Id.* at ¶ 14.

2

In support of his claims against the City of Boston, Plaintiff cites to three (3) examples of the alleged municipal custom or policy of deliberate indifference to the conduct of police officers of failing to disclose exculpatory evidence and inadequately investigating cases occurring around the time of Plaintiff's conviction: (1) *Commonwealth v. Johnson*; (2) *Commonwealth v. Ellison*; and (3) *Commonwealth v. Leaster*. *See* Amended Complaint at ¶¶ 38-43. Contrary to Plaintiff's self-serving and unsupported allegations, none of these cases involves any failure on the part members of the Boston Police Department to turn over exculpatory evidence.[1]

Plaintiff sets forth allegations involving six other criminal investigations and prosecutions in support of his claim against the City – none of which have any indicia of reliability or relevance as to Plaintiff's municipal liability claim as the alleged police conduct did not take place until in or after 1988 – nearly 15 years after the armed robbery, murder and ensuing investigation which led to Plaintiff's conviction. Specifically, Plaintiff alleges that:

- 1989, *Commonwealth v. Lewin*, police officers lied in affidavits to obtain search warrants. Amended Complaint at ¶ 48.
- 1988/1989, *Commonwealth v. Drumgold*, police failed to disclose that a key witness was suffering from a brain tumor that caused severe memory loss and that they gave

---

[1] Specifically: (1) *Commonwealth v. Johnson* does not support Plaintiff's contention that former Officer Francis Whalen intentionally and/or negligently "failed to disclose exculpatory evidence." *See* 365 Mass. 534, 548-549 (1972) and Complaint at ¶ 38. Significantly, therein the Supreme Judicial Court stated: "What we have here is overworked counsel [i.e., the prosecutor] who by reason of calendar pressures was compelled to defer serious preparation for trial until shortly before the event, and was therefore quite naturally embarrassed in assembling and marshalling material and in communicating it to the defense." *Commonwealth v. Johnson*, 365 Mass. at 550. Indeed, by way of trial testimony, it was Officer Whalen who assisted criminal defendant Lawyer Johnson in learning of the existence of a statement which was not produced by the prosecutor. *See id.* at 548. (2) Similarly, *Commonwealth v. Ellison* did not involve any misconduct or negligence by investigating police officers. Rather it involved "the illegal withholding by the *prosecution* of exculpatory evidence," and the SJC specifically found that the exculpatory evidence at issue was in fact in the hands of the prosecutor. 376 Mass. 1, 8-9, 11-12 (1978). (3) Plaintiff's allegation that Bobby Joe "Leaster's ability to mount a defense was weakened by the failure to disclose exculpatory evidence" is also unfounded and speculative at best as Leaster's conviction was in large part based upon an out-of-court identification by the victim's wife occurring approximately 1 hour after the crime which the SJC held would have been admissible. *See Commonwealth v. Leaster*, 395 Mass. 96 (1985). Further, the "new evidence that came to light" which warranted a new trial was that in 1986, a new witness, a Boston school teacher, came forward after reading a news article about Leaster in the Boston Globe. Apparently, the school teacher, who was 13 years old at the time of the crime, had been near the scene of the crime moments after the murder took place, had seen two men fleeing, and neither was Leaster. *See* Charles Kenney, Justice for Bobby Joe, The Boston Globe Magazine (Feb. 28, 1988), at 15.

another witness free housing, food and money and wiped clean his criminal record in exchange for his testimony against Drumgold.[2] *Id.* at ¶ 49.

- 1989, *Commonwealth v. Mitchell*, police officers falsely testified that the Mitchell admitted to wearing the unusual clothing described by the victim.
- 1989, *Commonwealth v. Miller*, police arranged a suggestive identification procedure and failed to turn over the exculpatory evidence that police connected the subject rape with two other rapes that Miller could not have committed.
- 1989, Officer Trent Holland was chastised for fabricating testimony in which he claimed to have witnesses a drug deal looking across an empty field where in fact a large building stood.
- 1989, police engaged in conduct to incriminate Willie Bennett for the murder of Carol Stuart, including pressuring witnesses to give false statements and information, until after Charles Stuart committed suicide and evidence was uncovered revealing that he murdered his wife.

The temporal proximity of these incidences, however, is simply too remote to be discoverable or admissible as to Plaintiff's municipal liability. *See Foley v. City of Lowell*, 948 F.2d 10, 14 (1st Cir. 1991) (noting that in some circumstances post-event evidence may be relevant and admissible to "shed some light on what policies existed in the city" and finding no abuse in admitting evidence of an incident occurring six months later). Moreover, many of these matters involve no issues of law or fact which would be relevant to Plaintiff's *Monell* claim for an alleged municipal custom or policy of deliberate indifference to the conduct of police officers of failing to disclose exculpatory evidence.

## II.   APPLICABLE STANDARDS

### A.   Discovery

In terms of the discovery phase of a cause of action, Fed. R. Civ. P. 26(b)(2), provides that "[t]he frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has ample

---

[2] In 2008, a federal jury found that a witness was given an unspecified amount of money for an unspecified purpose and found in favor of Boston police officers with regard to all of the remainder of the allegations.

opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues."

Further, in regard to the timing and sequence of the discovery phase of litigation, Fed. R. Civ. P. 26(d) provides that "[u]nless the court upon motion, for the convenience of parties and witnesses and in the interests of justice, orders otherwise, methods of discovery may be used in any sequence, and the fact that a party is conducting discovery, whether by deposition or otherwise, does not operate to delay any other party's discovery."  Also of import, Local Rule 26.3 which concerns the phasing of discovery states that "to facilitate settlement and the efficient completion of discovery, the judicial officer has discretion to structure discovery activities by phasing and sequencing the topics which are the subject of discovery."

**B.     Separate Trials**

Relative to proceeding at the trial stage, Fed. R. Civ. P. 42(b) provides that "[t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim … or of any separate issue or of any number of claims … or issues."

The determination of whether separate trials are appropriate requires consideration of potential prejudice to the parties, possible juror confusion, convenience and economy. *See Tinch v. City of Dayton*, 77 F.3d 483, 1996 WL 77445, *3 (6th Cir. 1996); *McKellar v. Clark Equip. Co.*, 101 F.R.D. 93, 94 (D. Me. 1984); *see also Ricciuti v. New York City Transit Auth'y*, 796 F. Supp. 84, 86 (S.D. N.Y. 1992) ("bifurcation requires the presence of only one of these conditions").  Consequently, the decision to order separate trials depends on the particular facts

of the case. *See id.* Separate trials are appropriate where litigation of the first issue may eliminate the need to litigate the second issue and/or where one party will be prejudiced by evidence presented against another party. *See Amato v. City of Saratoga Springs, New York*, 170 F.3d 311, (2d Cir. 1999). Moreover, "[e]nsuring a fair trial must take precedence over economy and convenience." *See Payton v. Abbot Labs*, 83 F.R.D. 382, 394 (D. Mass. 1979).

In the present case, the City's motion does not merely satisfy one of the conditions of Rules 42(b). Rather, an Order for separate trials (and discovery) is consistent with all of the goals of Rule 42(b): it avoids prejudice, it is convenient and it is expeditious and economical. Furthermore, it ensures a fair trial.

## III.   ARGUMENT

To recovery on a cause of action against a municipality pursuant to 42 U.S.C. § 1983, a plaintiff must establish that: (1) there existed a municipal custom or policy of deliberate indifference to the commission of the constitutional violation complained of; and (2) this custom or policy was the cause of and moving force behind the particular constitutional deprivation of which plaintiff is complaining. *See Monell v. Dep't of Soc. Servs. of City of new York*, 436 U.S. 658, 691 (1978) (hereinafter "*Monell*").

Important to the instant motion, under *Monell* and its progeny, the City may be held liable *only if it is found* that one or more members of the Boston Police Department violated an established constitutional right which would have created individual liability under 42 U.S.C. § 1983, since a municipality may not be held liable on a *respondeat superior* theory. *See Voutour v. Vitale*, 761 F.2d 812 (1st Cir. 1985), and *City of Los Angeles v. Heller*, 475 U.S. 378 (1989); *see also City of Canton v. Harris*, 109 S. Ct. 1197 (1989); *Bordanaro v. McLeod*, 871 F.2d 1151 (1st Cir. 1989). Thus, to recover from the City for a municipal custom or policy, Plaintiff must

6

first establish that: "(1) the challenged conduct was attributable to a person acting under color of state law; and (2) the conduct deprived the plaintiff of a right secured by the Constitution or the laws of the United States." *See Johnson v. Mahoney*, 424 F.3d 83, 89 (1st Cir. 2005) (noting that the second element requires that the plaintiff establish that the alleged conduct was the "cause" of the alleged deprivation of rights secured by the Constitution or federal laws).

Since liability first must be determined under these principles, the City seeks bifurcation of discovery and trial on the issue of whether Plaintiff suffered a deprivation of his purported constitutional right to receive exculpatory evidence: (1) for reasons of judicial economy; (2) for reasons of fairness due to the great potential of prejudice to the City in the event of a singe trial; and (3) the tremendous expense the City would incur participating in discovery and a trial on both of these issues when the issue of whether there was a municipal custom or policy of deliberate indifference to the conduct of police officers of failing to disclose exculpatory evidence need not be reached in the event of a defense verdict on the hotly contested issue of an underlying constitutional violation.

## A.    The interest of judicial economy necessitates bifurcation and separate trials.

Judicial economy weighs heavily in favor of bifurcation of discovery and trial of Plaintiff's underlying claim that exculpatory evidence was withheld during the investigation and prosecution of Plaintiff for the murder of James C. Corry, on the one hand, and Plaintiff's claim of a municipal custom or policy of deliberate indifference to the conduct of police officers failing to disclose exculpatory evidence, on the other hand, as there will be no need to conduct discovery or trial as to the municipal liability claim if a jury finds that no member of the Boston Police Department committed a constitutional violation which caused Plaintiff to suffer an unfair trial. *See Mitchell v. City of Boston*, 130 F. Supp. 2d 201, 208 (D. Mass. 2001) (noting that court

ordered bifurcation of trial, with liability of individual defendants to comprise first phase and liability of City to comprise second). This is because, as a prerequisite to his municipal liability claim against the City, Plaintiff must establish that some member of the Boston Police Department engaged in conduct which caused Plaintiff to suffer an unfair trial. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *see also Tinch v. City of Dayton*, 1996 WL 77445 at *3 ("A city or state's policies, standing alone, do not give rise to a § 1983 action."); *Busch v. The City of New York*, No. 00 CV 5211, 2002 WL 31051589, *3 (E.D. N.Y. Sept. 9, 2002) (noting that liability as to supervisors who were not present at underlying shooting hinged on a finding of liability against officer who was). The First Circuit has stated:

> Without a finding of a constitutional violation on the part of a municipal employee, there cannot be a finding of section 1983 damages liability on the part of the municipality. *Heller,* 475 U.S. at 798-99, 106 S.Ct. 1571. Thus, a defendant's verdict in a bifurcated trial forecloses any further action against the municipality, resulting in less expense for the litigants, and a lighter burden on the court.

*Wilson v. Town of Mendon*, 295 F.3d 1, 7 (1st Cir. 2002).

As the Court is familiar with the factual allegations in this matter,[3] the City omits an extended discussion of the same. It is sufficient to state that Plaintiff alleges that members of the Boston Police Department withheld three pieces of purportedly exculpatory evidence: (1) handwritten notes by investigating Officer Whalen of a March 15, 1973 meeting with prosecution witness Wyatt Moore; (2) an April 24, 1973 transcribed statement of Charles Cahill, who did not testify at Plaintiff's criminal trial; and (3) a typed report to Officer Whalen regarding an April 26, 1973 conversation with prosecution witness Wyatt Moore at the Billerica House of Correction. Plaintiff further alleges that this withholding of exculpatory evidence violated established constitutional rights, and ultimately resulted in his conviction. The evidence on this

---

[3] *See Memorandum of Law in Support of Motion to Dismiss of Defendants Francis Whalen and City of Boston.*

issue is very limited. Moreover, many of the witnesses are deceased.

On the other hand, the evidence which Plaintiff intends to introduce in support of his municipal liability claim is significantly larger in scope, and consequently, will expand the length of discovery and trial. This is because Plaintiff's municipal claim turns upon evidence that the investigating and/or prosecuting police officers were acting in accordance with a policy, custom or practice of the municipality. Moreover, Plaintiff's municipal liability claim includes an alleged failure to discipline officers for engaging in misconduct of a constitutional magnitude. Such claims require proof far beyond the investigation and prosecution of the Corry homicide. Consequently, bifurcation and separate trial of Plaintiff's underlying claim that exculpatory evidence was withheld during the underlying investigation and prosecution from Plaintiff's claim of a municipal custom or policy will promote judicial economy. *See Ismail v. Cohen*, 706 F. Supp. 243, 251-252 (S.D. N.Y. 1989) (noting that "[t]he §1983 claim against the City would present different and far more complicated standards of liability and causation for the jury, would greatly expand the length and scope of the trial and would add to the expense of the parties").

Indeed, one of the explicit goals of 42(b) is to promote expedition and economy. This is not always accomplished by means of a single trial. *See e.g., Reiner Distributors, Inc. v. Admiral Corp.*, 257 F. Supp. 619, 620 (S.D. N.Y. 1965) ("When there is a possibility, however, of shortening the trial considerably by holding a separate trial on an issue, the court should exercise its discretion ... and try the issue separately if such a procedure will not prejudice either side."). This is particularly true where the possibility exists that, if issues are bifurcated, there will never even be a second trial. In that event, there can be no denying that bifurcation promotes expedition and economy. *Ricciuti v. New York City Transit Auth'y*, 796 F. Supp. at 87 (ordering

bifurcation where "the potential benefit of avoiding a second trial ... outweighs the potential cost of conducting one large trial").

In the present case, if the court were to allow the City's motion for a separate trial, the issue of underlying violation will, of necessity, be tried first. Once that issue is tried, there is a significant likelihood that there will be no need for a second trial of the claims against the City. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). In the alternative, the jury could return a verdict in Plaintiff's favor as to an underlying issue and the entire case could be settled before the trial of Plaintiff's claims against the City. Thus, a second trial is necessary only where (1) the jury returns a verdict in Plaintiff's favor on violation; and (2) Plaintiff and the City remain unable to reach a settlement. The simple possibility (not likelihood) that two trials will ultimately be required does not, however, outweigh the significant potential benefits accompanying bifurcation.

For all of these reasons, judicial economy would be well-served by separate trials of Plaintiff's underlying claim that exculpatory evidence was withheld during the investigation and prosecution of Plaintiff for the Corry homicide, on the one hand, and Plaintiff's claim of a municipal custom or policy of deliberate indifference to the conduct of police officers failing to disclose exculpatory evidence, on the other hand, since a trial as to *Monell* liability would be mooted by a defense verdict on the underlying constitutional violation.

**B.      The potential of juror confusion and prejudice to the City necessitates bifurcation and separate trials.**

Bifurcation is also necessary to ensure that the City receives a fair trial as there is a substantial risk of juror confusion and prejudice to the City in the event that the issue of an underlying constitutional violation is not tried separately from the issue of a municipal custom or policy of deliberate indifference to the conduct of police officers of failing to disclose

10

exculpatory evidence. This is because in an attempt to establish the existence of an unconstitutional policy, custom or practice and failure to train, it is expected that Plaintiff will attempt to discover and introduce evidence involving policies and procedures of the Boston Police Department, as well as the actions of officers other than the officers involved in the investigation and prosecution of Plaintiff for the murder of James C. Corry with regards to matters which are separate and distinct from the Corry homicide.[4] Aside from expanding the scope and time of the trial, such evidence poses the real risk that a jury will make a determination as to whether there was an underlying constitutional violation based upon what happened in other investigations and prosecutions. Such evidence is inherently prejudicial to the City as there can be no municipal liability without a finding of an underlying constitutional violation.

The question of whether evidence of misconduct by officers other than those involved in the investigation and prosecution of Plaintiff for the Corry homicide would be admissible as to whether there was an underlying violation in this case at trial is readily resolved. There is simply no basis for such highly prejudicial evidence to be admitted as to the issue of an underlying constitutional violation. Such evidence is arguably admissible to establish that the City maintained a policy or custom of deliberate indifference to the rights of citizens. *Monell*, 436 U.S. at 691-694. There is no basis, however, upon which such evidence may be admitted as to the issue of whether Plaintiff suffered a constitutional deprivation and a resultant unfair trial. *See, e.g., Carter v. District of Columbia*, 795 F.2d 116, 126-127 (D.C. Cir. 1986) (finding that the reading of inflammatory newspaper accounts of incidents involving other officers exposed defendants officers to unfair prejudice); *Ricciuti*, 796 F. Supp. at 86 (defendant officers would be

---

[4] Indeed, in support of his *Monell* claim, Plaintiff cites to several notorious events in the Boston Police Department and alleges that these events evidence the City's policy, custom or practice. *See supra* Section I.

unfairly prejudiced by evidence of incidents involving other officers); *Marryshow v. Town of Bladensburg*, 139 F.R.D. 318, 320 (D. Md. 1991) (evidence of prior incidents involving other officers offered to prove a custom or policy of the municipality is inadmissible against defendant officers).

Given the incidents of misconduct from other cases cited by Plaintiff in his Complaint and considering further that Plaintiff may attempt to offer the St. Clair Report in evidence, it is clear that bifurcation is the only way of assuring that the City receives a fair trial. Nor would limiting instructions suffice as without bifurcation, the sheer volume of limiting instructions that would need to be given would no doubt prejudice the City. *Carter v. District of Columbia*, 795 F.2d at 126, 132 (finding that limiting instructions given to the jury "were insufficient to guard against the danger of unfair prejudice"). Moreover, the number of limiting instructions would create a risk that the jury would be unable to properly sort out all of the evidence and, consequently, the City will be prejudiced with regard to the initial determination as to whether there was an underlying deprivation of a constitutional magnitude which caused Plaintiff to suffer an unfair trial.[5]

Moreover, the substantial risk of prejudice to the City necessitates not just bifurcation of the trial, but substantially supports a basis for conducting two separate trials with different juries. A jury, after finding an underlying civil rights violation would then be asked, relative to the claim against the City, to review additional evidence, much, if not all, of it previously inadmissible as to underlying violation, concerning the bad acts of other officers in unrelated matters. The jury's natural inclination after ascertaining a constitutional violation would be to assign some degree of blame to the City regardless of the content and/or quality of any limiting

---

[5] In *United States v. Garcia-Rosa*, 876 F.2d 209, 222 (1st Cir. 1989), the First Circuit rules that the prejudice caused to the defendant by "other bad act" evidence "was so severe and unfair that it cannot be remedied merely through a limiting instruction." The same is true in this case.

instructions made by the court. This is very important because after establishing an actionable violation of Plaintiff's civil rights, to succeed in his municipal liability claim, Plaintiff must show that: (1) the City created or maintained a policy, practice or custom in violation of a constitutional standard; (2) the City's policymaking officials, who were on notice of the misconduct, remained deliberately indifferent to or tacitly authorized continuation of the misconduct; and (3) the policy, practice or custom caused the violation of Plaintiff's civil rights. *Jonielunas v. City of Worcester Police Dep't, et al.*, 338 F. Supp. 2d 173, 177 (D. Mass. 2004). After finding an underlying constitutional violation by one or more members of the Boston Police Department, the likelihood that a jury presented with evidence indicating the bad acts of other officers could overcome its predisposition to Plaintiff's case and pay proper attention to the causal nexus required for a finding of municipal liability is too much of a risk to the City's right to a fair trial. Part and parcel to that right is the presumption of an unbiased finder of fact.

For all of these reasons, bifurcation of the issue of whether there was a withholding of exculpatory evidence by one or more members of the Boston Police Department during the investigation and prosecution of Plaintiff for the Corry homicide from the issue of whether there was a municipal policy or custom is appropriate on the ground of prejudice as well. *See Amato v. City of Saratoga Springs, New York*, 170 F.3d at 316.

## C.   Plaintiff will not suffer prejudice in the event of bifurcation and separate trials.

Plaintiff will not suffer prejudice in the event of bifurcation as there is little to no overlap in the evidence which he will present on the issue of an underlying constitutional violation and the issue of a municipal custom or policy of deliberate indifference to the conduct of police officers of failing to disclose exculpatory evidence. Moreover, the evidence which Plaintiff will offer as to the latter is entirely irrelevant and inadmissible as to the issue of an underlying

13

constitutional violation in this case.

**D.     Phased discovery is necessary and would promote the protections and/or goals of Fed. R. Civ. P. 26, Local Rule 26.3 and Fed. R. Civ. P. 42(b).**

It is well within this Honorable Court's discretion "to structure discovery activities by phasing and sequencing the topics which are the subject of discovery … [i]n order to facilitate settlement and the efficient completion of discovery." Local Rule 26.3. Indeed, in *Wilson v. Town of Mendon*, 294 F.3d 1, 7 n. 15 (1st Cir. 2002), District Judge Stearns, sitting by designation with the First Circuit Court of Appeals, opined that "[i]n phasing the trial of the case, the court will ordinarily phase discovery as well." Further, Judge Stearns specifically noted that "[r]eopening discovery on a plaintiff's municipal liability claims remains an option in the unlikely event that the municipality chooses not to satisfy an adverse phase one judgment."

Here, the expense and burden of complying with discovery requests relative to whether there was a custom or policy of deliberate indifference *prior to* a determination as to whether there was an underlying civil rights violation outweighs any potential benefits, is not justifiable and would put undue, and possibly unnecessary, strain on the resources of this Court, as well as on the City of Boston. Indeed, the matters cited in Plaintiff's Complaint in support an alleged custom or policy of the City to violate the rights of its citizens are likely to be the subject of Plaintiff's requests for discovery. In the event that discovery is not bifurcated, the City will be saddled with the undue and unnecessary burden of complying with discovery requests as to an issue which may be mooted by a defense verdict as to the issue of whether there was an underlying civil rights violation.

Moreover, because of the extensive allegations made by Plaintiff, the City estimates that it will need to produce scores of files regarding the alleged incidents cited in Plaintiff's Complaint, including, but not limited to the personnel files of all of the police officers involved

14

in the cited incidents, as well as the scores of Internal Affairs files associated with those police officers involved in the cited incidents of police misconduct. Significantly, the subject matter likely to be sought by Plaintiff, like the material in his own case, goes back in many instances fifteen to thirty years and the files of many of these notorious cases are voluminous and present the potential for numerous motions to limit the production of records contained therein on grounds of privacy and/or privilege.

The City anticipates that it will require twenty to thirty (20 to 30) additional witnesses to be deposed or called at trial with respect to the issue of whether there was a custom or policy of deliberate indifference in addition to any expert discovery and testimony. And, if the trial is not bifurcated, the City anticipates that the issue of whether there was an underlying constitutional violation will require no mare than two (2) weeks of trial and the issue as to a custom or policy an additional four to six (4 to 6) weeks of trial.

While the allegations presented by Plaintiff are serious, and Plaintiff is entitled to proceed with his municipal liability claim, Plaintiff does not possess, nor do the rules of civil procedure endow him, with the right to conduct an unfettered "fishing expedition" into the files of unrelated cases in the possession of the City. Arguably, the files are not related until an underlying civil rights violation has been established.

For all of these reasons as well as all of the reasons supporting separate trials, the City respectfully requests this Honorable Court to stay discovery with regard to whether there was a custom or policy of deliberate indifference to the conduct of police officers of failing to disclose exculpatory evidence should be stayed until it is determined whether there was an underlying civil rights violation.

## IV.    CONCLUSION

For all of the foregoing reasons, Defendant City of Boston, respectfully requests that this Honorable Court bifurcate discovery and trial in this civil action into phases: (1) the first to be discovery and trial as to Plaintiff Laurence M. Adam's underlying 42 U.S.C. § 1983 claim that exculpatory evidence was withheld from him in violation of his rights under the United States Constitution and that this resulted in an unfair and unconstitutional trial and a wrongful conviction; and (2) the second, if necessary, to be discovery and trial as to Plaintiff's municipal liability claim that the City of Boston maintained a municipal custom or policy of deliberate indifference to the conduct of police officers of failing to disclose exculpatory evidence.

**Defendant,**
**CITY OF BOSTON,**
By its attorneys,


/s/ Hugh R. Curran
Hugh R. Curran (BBO# 552623)
Bletzer and Bletzer, PC
300 Market Street
Brighton, MA 02135
(617) 254-8900
hcurran@bletzerlaw.com

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on the ___ day of August, 2008, I electronically filed with within document with the Clerk of the United States District Court for the District of Massachusetts, using the CM/ECF System.  The following participants have received notice electronically:

**For Plaintiff Laurence M. Adams,**
John J. Barter
83 Atlantic Avenue
Boston, MA 02110-3711
barterJ@msn.com

/s/ Hugh R. Curran

17