## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LAURENCE M. ADAMS, | ) |
| | ) |
| Plaintiff, | ) |
| V. | ) NO: 07-CA-10698 RGS |
| | ) |
| CITY OF BOSTON, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OF PLAINTIFF, LAURENCE M. ADAMS, IN OPPOSITION TO DEFENDANT'S MOTION FOR BIFURCATION OF DISCOVERY AND TRIAL (DOCUMENT NO: 29)

### I.   Introduction

The plaintiff, Laurence M. Adams, states his opposition to Defendant's Motion For Bifurcation of Discovery and Trial, which was filed on August 6, 2008, and docketed as Document No: 29.   In the circumstances of this case bifurcation of discovery or trial would be likely to make these proceedings less efficient and such an order would be prejudicial to the plaintiff.   This case is proceeding against the City of Boston alone, and not against individual police officers, so bifurcation would do little more than permit the City of Boston to delay their obligation to provide discovery on the *Monell* issues that are of central importance to this case.

1

## II.   Standards to be Applied in Regulating the Order of Discovery

There is no dispute that this Court has the discretion to limit discovery to appropriate categories of information, and to determine the timing and sequence of discovery.   Rule 26(b)(1) provides in part that parties may "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense -- including the existence, description, nature, custody, condition, and location of any documents or tangible things and the identity and location of persons who know of any discoverable matter." Rule 26(b)(1) F.R.Civ.P. There should be no doubt that the discovery sought by the plaintiff on *Monell* issues is well within these limits since this information is "relevant" to the plaintiff's claim.   The defendant points to the language of Rule 26(b)(2)(C)(i)-(iii) for authority limiting discovery.   In this case the discovery sought by the plaintiff is not in any sense exempt from discovery under that rule. (i)   The Monell discovery is not "unreasonably cumulative or duplicative" nor can it be obtained more conveniently from another source.   The plaintiff seeks information, *inter alia*, on the practices, policies, customs, and training practices of the Boston Police Department.   The City of Boston is in the best position, and is likely to be the only source for most if not all of this information. (ii) The plaintiff has not previously had "ample opportunity to obtain" such discovery in the past, but did submit timely document requests and interrogatories seeking such information in this case and is

awaiting responses to such discovery.   (iii)   The "burden and expense of the proposed discovery" does not outweigh "its likely benefit."   This discovery is important to the resolution of this case and as further discussed below, the case is ripe for discovery on these issues.   There is a certain amount of "burden" associated with responding to any discovery, but that burden does not outweigh the need for the discovery on these important and central issues in this case.

As the City accurately notes, this Court has the discretion to enter orders in connection with the timing and sequence of discovery under Rule 26(d).   However, under the circumstances of this case the efficiency of these proceedings would be enhanced by permitting discovery against the City to proceed, rather than having such discovery suspended pending the results of a bifurcated trial.   Finally, pursuant to Local Rule 26.3 this Court has discretion to enter orders on the phasing of discovery as it deems appropriate, and in so doing this Court may consider discovery that may "facilitate settlement and the efficient completion of discovery" and "developing information needed for a realistic assessment of the case."   The plaintiff submits that the possibility of "settlement" and the "efficient completion of discovery" would not favor bifurcation of either discovery or trial on the *Monell* issues.   As discussed below, there is a significant amount of information regarding the constitutional violations that

Mr. Adams has suffered, and the City is aware of that information. Hundreds of pages of discovery regarding the underlying criminal case was disclosed by the plaintiff at an early stage of this case, and the City has had the opportunity to review the extensive Superior Court trial Court record.   It is submitted, that aside from the *Monell* issues upon which the City has provided no discovery, there has been disclosure of information that would advance "a realistic assessment of the case."

III. **Since There Should Be No Dispute that Exculpatory Evidence Was Withheld From Mr. Adams at his Criminal Trial in 1974 and That This was a Constitutional Violation it Would Not be Efficient to Suspend Discovery and Trial on the *Monell* Issues As Requested by the City of Boston.**

The City requests a bifurcation order that would break down this case into two phases: "(1) the first to be discovery and trial as to the Plaintiff, Laurence M. Adam's ("Plaintiff"), underlying 42 U.S.C. § 1983 liability claim that exculpatory evidence was withheld from him in violation of his rights under the United States Constitution and that this resulted in an unfair an unconstitutional trial and a wrongful conviction; and (2) the second, if necessary, to be discovery and a trial as to Plaintiff's municipal liability claim that the City of Boston maintained a municipal custom or policy of deliberate indifference to the conduct of police officers of failing to disclose exculpatory evidence." Defendant's Memorandum at  p. 1.  Such an Order would allow the City to postpone its discovery compliance obligations,

4

and it would delay discovery and trial on the *Monell* issues, but it would not be in the interests of either judicial economy or fundamental fairness.

The City argues that the question of whether or not any Boston Police Officer withheld evidence and whether Mr. Adams "suffered a deprivation of his *purported constitutional right* to receive exculpatory evidence" should be the subject of a first round of discovery and trial before the plaintiff is permitted any discovery from the City with regard to its practices and policies in connection with exculpatory evidence. Defendant's Memorandum at 7. However, there is no doubt that Mr. Adams was deprived of access to exculpatory evidence, and while the City describes such access as a "purported constitutional right" there is similarly no doubt that having access to such evidence is a genuine, well-established, and *actual constitutional righ*t, not a *purported* constitutional right. The City should be required to provide discovery on the *Monell* issues promptly, rather than delaying such responses.

**The Murder Conviction of Mr. Adams was Vacated**
**Based Upon Constitutional Violations and Withholding of**
**Exculpatory Evidence by the Boston Police.**

On March 13, 1974, Mr. Adams, was convicted of the offenses of murder in the first degree and armed robbery and he was sentence to death by electrocution.  The conviction was affirmed following a first motion for new trial and a direct appeal, by the Supreme Judicial Court on March 31, 1978.  *Commonwealth v. Adams*, 374 Mass.

5

722 (1978). Evidence that was first discovered nearly thirty years after trial established that the Boston Police Department had exculpatory evidence in its possession at the time of trial which undermined the testimony of Commonwealth witnesses, Wyatt Moore, Suzie Moore, who claimed that they had heard Mr. Adams make inculpatory statements linking him to the murder. This "admission" testimony was the keystone of the prosecution, but Mr. Adams was deprived of the opportunity to defend against this evidence.

On April 15, 2004, Associate Justice Robert A. Mulligan allowed a motion for new trial that was filed by Mr. Adams. *See Commonwealth v. Adams*, Suffolk Superior Court No: 74652, 2004 Mass. Super. LEXIS 225 (April 14, 2004)("New Trial Decision").[1]   The Superior Court found that there was newly discovered evidence, specifically including documents that were in the files of the Boston Police Department. *Id.*   The Superior Court found that the newly discovered evidence "casts real doubt on the justice of the conviction" and that there was a "substantial risk that the jury would have reached a different conclusion had the evidence been admitted at trial." *Id* at *18.   The Superior Court found that the newly discovered evidence "constitutes material exculpatory evidence that should have been disclosed by the Commonwealth to the defense pursuant to the Fifth, Sixth, and Fourteenth Amendments to

---

[1]    A copy of that Superior Court decision is attached hereto as Exhibit A.

6

the United States Constitution and Article 12 of the Massachusetts Declaration of Rights. See *Brady v. Maryland*, 373 U.S. 83, 87, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963); *Kyles v. Whitley*, 514 U.S. 419, 437-38, 131 L. Ed. 2d 490, 115 S. Ct. 1555 (1995); *U.S. v. Bagley*, 473 U.S. 667, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1986); *Commonwealth v. Tucceri*, 412 Mass. 401, 589 N.E.2d 1216 (1992); *Commonwealth v. Gallarelli*, 399 Mass. 17, 502 N.E.2d 516 (1987); *Commonwealth v. Ellison*, 376 Mass. 1, 379 N.E.2d 560 (1978) (convictions for armed robbery and felony murder overturned)." *Id.* at *18. There was no appeal from the findings and rulings of the Superior Court. The fact that Mr. Adams had a constitutional right to access to such evidence has been litigated and determined "by a valid and final judgment." *See Johnson v. Mahoney*, 424 F.3d 83, 93 (1st Cir. 2005).

The findings of the Superior Court establish that Mr. Adams suffered a constitutional deprivation of his rights to due process of law, and to a fair trial, as a result of the failure to disclose exculpatory evidence. The Superior Court found that "[s]ome of this newly discovered evidence *was disclosed in these postconviction proceedings from Police files and may not have been in the files of the District Attorney at the time of trial*, but the exculpatory evidence should still have been disclosed." *Id* at *20 (emphasis added). Important exculpatory evidence, which was in the files of the City of Boston Police Department, was not disclosed to

7

the Assistant District Attorney who prosecuted the criminal case against Mr. Adams.  Since the evidence was not disclosed to the prosecutor it was obviously withheld by the Boston Police Department.

The Assistant District Attorney who presented the Adams case to the grand jury, and who tried the case to a jury, Superior Court Judge Roy presiding, was Stephen Delinsky.  Mr. Delinsky was recently asked[2] about some of these documents which the Superior Court found to be newly discovered exculpatory evidence.  Portions of the Delinsky deposition are attached hereto as Exhibit B.  Mr. Delinsky had no recollection of seeing the notes of Detective Sergeant Whalen describing his meeting at the Deer Island House of Correction with Commonwealth witness, Wyatt Moore.  "I saw this document yesterday and my memory is I had never seen it before." Delinsky TR. at 18.  The Superior Court found that these notes demonstrated the inconsistency of the statements that were given by Wyatt Moore over a period of time. New Trial Decision at *14 - *15.

Mr. Delinsky had not seen a police report dated April 26, 1973, addressed to Sergeant Detective Whalen and signed by Officer George Whitley. "The reason that I don't believe I saw this report previously is because of the references in here to the independent

---

[2] Mr. Delinsky was deposed on February 29, 2008 in a separate civil action pending against the Commonwealth of Massachusetts.  A copy of this deposition has been made available to counsel for the City of Boston.  Before Mr. Delinsky was deposed he was provided with copies of trial transcripts by counsel for Mr. Adams, and counsel for the Commonwealth also met with him prior to the deposition and allowed him to review document.

conversation with Warren Ambers." Delinsky TR. 20.  Mr. Delinsky testified that the contents of that report "would have been very important to me," *id* at 21, and that if he had seen the document "I would have remembered doing something. . ." *Id* at 22.  That report showed that Wyatt Moore was incarcerated with Warren Ambers at Billerica House of Correction, and that Warren Ambers told Wyatt Moore facts and details about the homicide, which Wyatt Moore subsequently attributed to Mr. Adams.  The Superior Court found this police report to be significant, noting that Wyatt Moore's statements "evolved after Mr. Moore had conversations with Warren Ambers at the Billerica House of Correction.  However, at trial Mr. Moore did not acknowledge that he discussed the matter with Warren Ambers." New Trial Decision at *15.[3]

Finally, Mr. Delinsky was asked about a previously undisclosed recorded and transcribed statement of a man named Charles Connelly, also known as Charles Cahill.  Mr. Delinsky remembered seeing this document for the first time on the day before his deposition.  "I have no independent memory of seeing this document prior to that, primarily because it had independent admissions of Harry Ambers and more details about his brother. . ." Delinsky TR. at 24.  This "newly discovered transcribed statement given by Mr. Cahill to

---

[3] The Superior Court further found "[t]he trial court in its instructions to the jury suggested that the jury evaluate how Mr. Moore would have learned about the facts if he did not learn them from Mr. Adams. . . .The Police Report dated April 26, 1973 would have allowed the defense to argue that Mr. Moore learned these facts from Warren Ambers." New Trial Decision at *15.

Sergeant Whalen indicates that Harry Ambers bragged about committing the offense with his brother." New Trial Decision at *17. When asked if this was an important document Mr. Delinsky testified "Well, it was stenographically recorded, yes, I would have considered this to be an important document." Mr. Delinsky testified that he would have disclosed the document to defense counsel if he had seen it. *Id* at 25.

In describing the importance of these documents which were in the possession of the Boston Police Department, and which were never disclosed to the defense, and which Mr. Delinsky says he never did see, the Superior Court found:

> The police investigation files, which were not available to the defense prior to trial, could have been used to impeach Wyatt Moore, Lynn Moore, and Sergeant Whalen. If the defense had access to the contemporaneous notes of Sergeant Whalen, and reports which were addressed to him, he too could have been questioned about the evolution of the statements of Wyatt Moore.

New Trial Decision at *15- *16.

The Superior Court recognized that Wyatt Moore was a "chief witness" for the Commonwealth, and that the record now reveals that he made inconsistent statements about the "admissions" of Laurence Adams. "These 'admissions' were at the core of the Commonwealth's proof and theory of the case." *Id* at *13-*14. Attorney Delinsky concurred in this assessment, and testified that if it were not for evidence that Mr. Adams made certain "admissions" there would have been no basis for the criminal prosecution. When Mr. Delinsky was

10

asked if he relied heavily upon the "admissions witnesses" in the criminal trial proceedings the following exchange occurred:

> A.   Yes, yes, those admission witnesses were extremely important, absolutely.  Without those the case would have been directed; there would have been insufficient evidence.
>
> Q.   So it's your opinion as the trial prosecutor that he would have been found not guilty but for those admissions witnesses?
>
> A.   I wouldn't have indicted him.   I couldn't have indicted him.

Delinsky TR. 41.   The record reveals, and the findings of the Superior Court have determined, that documents in the possession of the Boston Police Department were "newly discovered" never having been provided to Mr. Adams prior to his criminal trial, and the testimony of Mr. Delinsky shows that he never revealed these documents because they were not given to him.

The history of how this exculpatory evidence that was in the possession of the Boston Police Department came to be disclosed thirty years after trial is central to this case and relevant to the pending motion to bifurcate and illustrative of the City of Boston Police Department's historical antipathy for disclosing evidence.

### The City of Boston Did Not Disclose Exculpatory Evidence At the Time of the Criminal Trial and Failed to Provide Such Documents Upon Request in Subsequent Proceedings.

As noted above, the Superior Court found that the evidence was "newly discovered" and that Mr. Adams was deprived of access to

"witness statements, police reports, and notes regarding the criminal investigation." *Adams* at *4 -*5. Even before Mr. Adams filed his successful motion for post conviction relief, efforts were made to obtain any exculpatory evidence directly from the City of Boston. Those efforts were rebuffed. In the course of investigating the underlying criminal case in anticipation of post-conviction proceedings, counsel for Mr. Adams requested that the City of Boston Police Department provide access to the police investigation files in a public records document request. *See* Exhibit C.[4] The City of Boston provided access to a redacted one page "journal entry" and nothing further. *See* Exhibit D.[5] In accordance with governing state law procedures, counsel appealed the City's response to this public records request to the Secretary of the Commonwealth. The Secretary of the Commonwealth issued an order requiring that access be permitted to documents in the Boston Police Department files, with certain specified redactions, and that such documents be produced within ten days. *See* Exhibit E.[6]

---

[4] The first written request under the Public Records Act, M.G.L. Ch. 66 § 10, was sent to the City of Boston Police Department on October 26, 1995. As the Superior Court noted, at the time of trial Mr. Adams was provided with a copy of this "journal entry." New Trial Decision at *7.

[5] The City of Boston responded on December 6, 1995, made brief reference to statutory provisions that provide exemption from disclosure in specific circumstances. On December 14, 1995, counsel for Mr. Adams provided a detailed response to the City of Boston explaining why such alleged exemptions were not applicable. The City of Boston provided no further responsive documents, nor any meaningful itemization of the documents that it chose to withhold from disclosure.

[6] The Order of the Secretary of the Commonwealth was issued on July 17, 1997.

The City of Boston chose not to provide the documents that were the subject of a lawful Order issued by the Secretary of the Commonwealth. *See* Exhibit F. As a result, whatever information was in the files of the Boston Police Department was unavailable to Mr. Adams when he filed his motion for post conviction relief.[7]

On December 6, 2000, after a Motion for Post-Conviction was filed by Mr. Adams in the Suffolk Superior Court, the Superior Court issued an Order Requiring Disclosure of Documents by the Boston Police Department and the Commonwealth. Copies of this Order were sent to the Boston Police Department on January 17, 2001, March 2, 2001, and March 21, 2001. Exhibit G. On March 21, 2001, the Boston Police Department provided access to certain records which were described as "a complete copy of the Boston Police Department Homicide file in connection with the November 1972, beating death of James C. Corry." *See* Exhibit H. As a result, documents that were not disclosed at the time of trial in 1974, and which were not disclosed pursuant to the order of the Secretary of the Commonwealth in 1997, were finally came to light. These documents proved to be central to Judge Mulligan's decision allowing the motion for post conviction relief. If the documents had been provided at the time of trial there may have been no

---

[7] If the Superior Court Associate Justice Mulligan had not taken the step of ordering that the entire homicide file be revealed, more than thirty years after the conviction, it is likely that Mr. Adams would still be in prison, and the exculpatory evidence would still be in the files of the Boston Police Department.

indictment against Mr. Adams, or if there were, Mr. Adams would at
least have had access to this evidence, and his constitutional
right to due process of law and to a fair trial would have been
preserved, and Mr. Adams may have been spared over thirty years of
incarceration.  If the City had provided access to these documents
when they were requested in 1995, or if the City had complied with
the lawful Order of the Secretary of the Commonwealth requiring the
disclosure of records and documents charges, in 1997, Mr. Adams
would have been able to avert several years of incarceration
because he could have established that the conviction was the
product of constitutional violations several years earlier.

**By Failing to Disclose Exculpatory Evidence the City
of Boston Police Deprived Mr. Adams of a Clearly
Established Constitutional Right.**

The City suggests that Mr. Adams did not have a constitutional
right to access to exculpatory evidence, or in the alternative that
the Police and the City had no obligations to Mr. Adams in
connection with any such rights, and that such responsibility fell
solely upon the office of the District Attorney.  As noted above,
the Superior Court concluded not only that Mr. Adams had a right to
such exculpatory evidence but that the failure to disclose such
evidence required a new trial. *Commonwealth v. Adams, supra* at *
18.  The Assistant District Attorney who worked on this case has
now testified under oath that he was not provided with access to
this evidence, and that if he had, it would have been disclosed to

14

the defense.  The seminal case regarding exculpatory evidence was decided a decade before the investigation was conducted in the underlying criminal case here where the exculpatory evidence was withheld. *See Brady v. Maryland*, 373 U.S. 83 (1963)(due process prohibits suppression of material evidence "irrespective of the good faith or bad faith of the prosecution"). *See also Giglio v. United States,* 405 U.S. 150, 153-155 (1972)(evidence that may be used to impeach an important witness must be disclosed).  While the City has argued that the *Brady* doctrine did not establish that Police have any disclosure obligation the federal courts that have considered this issue have concluded to the contrary.  *See Barbee v. Warden*, 331 F.2d 842, 846 (4th Cir. 1964)("If the police allow the State's Attorney to produce evidence pointing to guilt without informing him of other evidence in their possession which contradicts this inference, [police] officers are practicing deception not only on the State's Attorney but on the court and the defendant."); *Hilliard v. Williams,* 516 F.2d 1344, 1349-50 (6th Cir. 1975), *vacated on other grounds* 424 U.S. 961 (1976), *on remand* 540 F.2d 220, 222 (1976)(affirming judgment against investigator)(in a case arising from a 1970 murder investigation, court held that allegation that state investigator violated *Brady* states a claim under 42 U.S.C. § 1983); *Jones v. Chicago*, 856 F.2d 985, 995 (7th Cir. 1988)(Judgment under § 1983 affirmed based upon failure of police, and city, to disclose exculpatory evidence as

required by *Brady*); *Brady v. Dill,* 187 F.3d 104, 114 (1st Cir. 1999)("Constitutional wrong results from the officer's failure to deliver material information to competent authorities."); *Maher v. Town of Ayer,* 463 F.Supp. 2d 117, 122 (D.Mass. 2006)(claim under § 1983 premised in part upon police officer's failure to disclose evidence "that could have been put to exculpatory use at trial").[8]

Since the City of Boston is now arguing that there was no constitutional duty or obligation to disclose exculpatory evidence, it may be inferred that this is a reflection of the policy and practices in effect leading up to the trial of Mr. Adams, whereby exculpatory evidence would not be, and was not, disclosed. The Police and the City engaged in suppression of exculpatory evidence which resulted in the introduction of incomplete, misleading, and false evidence in the criminal trial proceedings.

The policies, customs, and practices of failing to disclose exculpatory evidence, and/or a reckless indifference to the obligation to disclose such evidence, is central to this case. Such policies and customs would permit trials to proceed based upon

---

[8]     In evaluating a case arising from police misconduct taking place in or about 1967, the First Circuit noted "if any concept is fundamental to our American system of justice, it is that those charged with upholding the law are prohibited from fabricating evidence and framing individuals for crimes that did not commit.  Actions taken in contravention of this prohibition necessarily violate due process. . ." *Limone v. Condon*, 372 F.3d 39, 44-45 (1st Cir. 2004).  The same is true here where the actions of the police undermined the constitutional operation of the criminal justice system and prevented the defendant from having access to evidence which "casts real doubt upon the justice of the conviction" and where there was a "substantial risk that the jury would have reached a different conclusion had the evidence been admitted at trial." Exhibit A at 5.

incomplete misleading and false evidence, and are wrong and unconstitutional now and they were wrong and unconstitutional at the time that such evidence was withheld from Mr. Adams leading up to the time of his trial.

This is not a case where it is speculative as to whether the plaintiff will be able to establish that he was deprived of due process of law, or where it is speculative whether the Police and the City of Boston failed to disclose exculpatory evidence.  The record already shows that the Superior Court found such violations, and the Assistant District Attorney has confirmed that the documents, which we now know to have existed in the files of the Boston Police Department, were not disclosed to him.

The City argues that other incidents where it has been alleged that Boston Police Officers have withheld information, or where other shortcomings have been alleged, which are available in the public record have no "indicia of reliability or relevance as to the Plaintiff's Municipal liability claim." Defendant's Memorandum at 3.  The City then argues that the plaintiff should be denied access to information that is currently available only to the defendant in the context of the motion to bifurcate.  It would not serve the interests of justice or judicial economy to prevent access to such discovery any longer.

This is a case where relevant information was withheld from Mr. Adams for so long that the police officers involved in the

investigation have retired and passed away. This twist of fate has put Mr. Adams in the position where his remaining claim is against the City of Boston. The City should be required to respond to outstanding discovery on the *Monell* issues, since it would appear that their defense strategy is likely to focus upon their position that any failure to disclose this exculpatory evidence should be attributed to individual police officers, or to the Office of the District Attorney, and not to the any policies, customs, or practices of the City.

IV. **The Motion to Bifurcate any Trial Should be Denied at This Time Because Such Separate Trials Would not Promote Judicial Economy.**

The defendant has requested a bifurcation of both discovery and trial. As argued above, discovery of information in the possession of the City should be allowed to proceed without delay. The second question of whether any trial should be bifurcated is premature at this stage. Once discovery is complete, and once there is sufficient disclosure to make a "realistic assessment of the case", Local Rule 26.3, the question of bifurcation may be ripe for reconsideration. However, it should be kept in mind that this is a case against the City, and it is not a case where there are living police officers who would be subject to a different trial and separate liability judgments. Part of the case is chief will be to establish that individuals associated with the Boston Police Department engaged in actions that violated the civil rights

of Mr. Adams but there will be no separate monetary judgment against such individuals. As a result, if there were a "preliminary trial" aimed at determining whether there were civil rights violations committed by city employees, such a trial would not conclude with a judgment against such individuals, but perhaps with answers to special questions. It would be more efficient to proceed with a single trial.

Based upon the record of this case as developed thus far, there is no basis to conclude that there would be "jury confusion" or that a single trial would be oppressive or burdensome. The motion to bifurcate should be accordingly denied.

## V.    **Conclusion**

For the above stated reasons it is submitted that the Defendant's Motion for Bifurcation of Discovery and Trial should be denied.

The plaintiff requests oral argument on this motion and estimates that such argument would require approximately thirty minutes of this Court's time.

Submitted by the plaintiff
Laurence M. Adams, by his
attorney

John J. Barter
Attorney at Law
(B.B.O. No: 032150)
Third Floor
83 Atlantic Avenue
Boston, MA 02110
(617) 367-2545

September 5, 2008

19

CERTIFICATE OF SERVICE

The above document was this day served electronically, upon counsel for the defendant, City of Boston:

Hugh R. Curran, Esq.
Bletzer & Bletzer, PC
300 Market Street
Brighton, MA 02135

hcurran@bletzerlaw.com

Signed under the penalties of perjury this 5th day of September, 2008.

John J. Barter